# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF MISSOURI
# SOUTHERN DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | |
| Plaintiff, | |
| v. | No. 16-03024-01-CR-S-MDH |
| **SAFYA ROE YASSIN**, | |
| Defendant. | |

## UNITED STATES' SUGGESTIONS IN OPPOSITION TO
## THE DEFENDANT'S MOTION TO REVOKE THE DETENTION ORDER
## PURSUANT TO 18 U.S.C. § 3145(b)

The United States of America, through Tammy Dickinson, United States Attorney for the Western District of Missouri, requests that the Court affirm the Detention Order of United States Magistrate Judge David P. Rush, entered on February 26, 2016.

### I. Introduction

These suggestions are submitted in support of the government's request that this Court affirm the Detention Order entered by Judge Rush on February 26, 2016. This order was appropriately entered pursuant to Title 18, United States Code, Section 3142, because the weight of the credible evidence presented at the detention hearing and supporting information from the criminal complaint and pretrial services report clearly and convincingly demonstrated that no conditions of release can be set to ensure the safety of the community.

1

## II. STATEMENT OF THE CASE

A.   Procedural Background

On February 17, 2016, a criminal complaint, alleging a violation of Title 18, United States Code, Section 875(c), was filed against the defendant (Doc. 1).[1]  On February 18, 2016, the defendant made her first appearance.  On February 19, 2016, the United States filed a Motion to Detain the defendant.  On February 23, 2016, a detention hearing was held, after which Judge Rush ordered the defendant be detained pending trial.  On February 26, 2016, Judge Rush entered a written Detention Order.

On February 23, 2016, the grand jury returned a single-count indictment against the defendant for her violation of Title 18, United States Code, Section 875(c).[2]

This case is presently set for trial on the April 25, 2016, joint criminal trial docket.

B.   Statement of Facts

For purposes of this proceeding, the record available to the Court includes the following:

1.   The indictment returned by the grand jury, which establishes probable cause of and the nature of the charges against the defendant (Doc. 18);

2.   The affidavit filed in support of the original criminal complaint, of which the Court may take judicial notice (Doc. 1 attachment);

3.   The Pre-Trial Services Bail Report; and,

---

[1] "Doc" – All references to Document (Doc) are items listed in Criminal Docket Sheet for Case # 6:16-cr-03024-MDH-1

[2] Communicating a threat pursuant to 18 U.S.C. § 875(c) is a "crime of violence." *United States v. Choudhry,* 941 F.Supp. 2d 347, 351 (E.D. N.Y. 2013).

4. The transcript of the detention hearing held on February 23, 2016 (Doc. 29).

### III. **DISCUSSION**

Section 3145(b) states in pertinent part:

> If a person is ordered detained by a magistrate judge... the person may file, with the court having original jurisdiction over the offense, a motion for revocation or amendment of the order. The motion shall be determined promptly.

18 U.S.C. § 3145(b). The district court reviews a Magistrate Judge's detention order *de novo. United States v. Maull,* 773 F.2d 1479, 1484 (8th Cir.1985) (en banc). Pursuant to 18 U.S.C. § 3145(b), the motion "shall be determined promptly." The district court may either hold an evidentiary hearing or review the pleadings and evidence developed before the Magistrate Judge. *United States v. Gaviria,* 828 F.2d 667 (11th Cir.1987); *United States v. Hensler,* 18 F.3d 936 (5th Cir.1994) (unpublished per curiam); see also *United States v. Barber,* No. 5:12–cr–50035–001, 13–50004–001, 2013 WL 3580195, * 1 (W.D.Ark. July 12, 2013) ("Although the review is *de novo,* and the Court has the power to hold an evidentiary hearing if necessary and desirable, the **Court may also simply review the evidence that was before the Magistrate and make an independent determination of whether the Magistrate's findings are correct**." (emphasis added)). That *de novo* review will lead this Court to the same conclusion reached by Judge Rush.

Pre-trial detention is authorized when "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community...." 18 U.S.C. § 3142(e)(1). "[E]ither danger to the

3

community or risk of flight is sufficient to authorize detention." *United States v. Sazenski,* 806 F.2d 846, 848 (8th Cir.1986). Generally, the Government has the burden of showing "by clear and convincing evidence that no release condition or set of conditions will reasonably assure the safety of the community and by a preponderance of the evidence that no condition or set of conditions ... will reasonably assure the defendant's appearance...." *United States v. Kisling,* 334 F.3d 734, 735 (8th Cir.2003) (quoting *United States v. Orta,* 760 F.2d 887, 891 (8th Cir.1985)).[3]

In this case, the crime with which the defendant has been charged constitutes a "crime of violence." These charges give rise to a rebuttable presumption that there exist no combinations of conditions which will reasonably assure the safety of any other person or the community. *See* 18 U.S.C. § 3142(e). The grand jury's indictment triggers this rebuttable presumption. *See United States v. Quartermaine,* 913 F.2d 910, 916 (11th Cir.1990). Where probable cause is found to believe that a defendant has committed a crime listed or in the circumstances set forth in 18 U.S.C. § 3142(e), a rebuttable presumption arises that no conditions or combination of conditions exist that will reasonably assure the appearance of the defendant and the safety of the community. A grand jury indictment on a covered offense is enough to demonstrate probable cause for purposes of triggering the presumption. *United States v. Vargas*, 804 F.2d 157, 163 (1st Cir.1986); *United States v. Holland*, 922 F.Supp.2d 70, 71 (D.D.C.2013).

---

[3] S*ee also*, *United States v. Adipietro*, 773 F. Supp. 1270 (W.D.Mo. 1991); and *United States v. Bailey*, 750 F. Supp. 413 (W.D.Mo. 1990).

However, by itself, a finding of probable cause based on an Indictment will not necessarily be sufficient to require a defendant's detention. Id. In *United States v. Hurtado*, 779 F.2d 1467 (11th Cir. 1986), the Eleventh Circuit stated:

> The showing of probable cause (by means of an indictment) may be enough to justify detention if the defendant fails to meet his burden of production, or if the government's showing is sufficient to countervail the defendant's proffer...but it will not necessarily be enough, depending upon whether it is sufficient to carry the government's burden of persuasion....[T]he government may not merely come before the trial court, present its indictment, and thereby send the defendant off to jail, foreclosing any further discussion. Rather, the defendant still must be afforded the opportunity for a hearing at which he may come forward with evidence to meet his burden of production, leaving on the government the ultimate burden of persuasion.

*Hurtado*, 779 F.2d at 1478.

The rebuttable presumption established in § 3142(e) shifts only the burden of production to the defendant; the burden of persuasion remains with the government. *Adipietro*, 773 F.Supp. at 1272. In meeting his burden of production, a defendant must produce "some evidence" contrary to the presumption. *Id* at 1272-73. Even if the defendant provides "some evidence" to rebut the presumption recited in § 3142(e), that presumption remains as an evidentiary factor militating against release. *United States v. Dillon*, 938 F.2d 1412, 1416 (1st Cir. 1991); *United States v. Cook*, 880 F.2d 1158, 1162 (10th Cir. 1989); *United States v. King*, 849 F.2d 485, 488 (11th Cir. 1988); *United States v. Martir*, 782 F.2d 1141, 1144 (2d Cir. 1986); *United States v. Diaz*, 777 F.2d 1236, 1238 (7th Cir. 1985); *United States v. Fortna*, 769 F.2d 243, 251 (5th Cir. 1985). "[C]ommunicating a threat in violation of 18 U.S.C. § 875(c) constitutes a 'crime of violence,' warranting detention under the Bail Reform Act." *United States v. Choudhry*,

941 F.Supp. 2d 347, 351 (E.D. N.Y. 2013); citing, *United States v. Dillard*, 214 F.3d 88, 97 (2nd Cir. 2000); *United States v. Ciccone,* 312 F.3d 535, 542 (2nd Cir. 2002) (holding that commission of crime by means of extortion and intimidation amounts to a "crime of violence").

If defendant presents "some evidence" to rebut the § 3142(e) presumption, the Court must apply § 3142(g) in deciding whether there are any conditions of release that will reasonably assure defendant's appearance and the safety of the community.

However, even if the Magistrate Court did not find that the presumption applied, there was sufficient evidence to detain the defendant.

C.  Detention Factors for Consideration

In determining whether there are conditions of release that will reasonably assure both the safety of the community and the appearance of the defendant at trial, 18 U.S.C. § 3142(g) requires the judicial officer determining the matter to consider:

> (1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence or involves a narcotic drug;
>
> (2) the weight of the evidence against the person;
>
> (3) the history and characteristics of the person, including –
>
> > (a) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and,
> >
> > (b) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release...

(4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release.

In this matter the record clearly and convincingly reflects, the United States Government has demonstrated that the defendant poses a serious risk to the safety of the community warranting her detention pending trial.

(1)     Nature and Circumstances of the Offense Charged

The defendant was unrelenting in her support of ISIS/ISIL and that violent group's actionable orders to encourage "lone wolves" to commit violent acts (Doc. 1-1, pg. 13, para. 34). As noted on her Twitter post on August 12, 2015, she informed her followers that the names and addresses of U.S. military were available and she posted 8 photographs of United States service members along with personal contact information for each person. On that very same day, and in response to another Twitter user that stated she might be raided, the defendant posted, "anyone raiding me will be shot on site." (Doc. 1-1, page 13, para. 31.)

Her virulent diatribe continued with an August 19, 2015, Twitter posting of the names of 150 United States Air Force personnel that listed these service members' towns of residence and phone numbers. That same link encouraged her Twitter followers to ". . . Rejoice, O supporters of the Caliphate State, with the dissemination of the information to be delivered to lone wolves. God said: And slay them wherever you may come upon them." (Doc. 1-1, pg. 14, para. 34.) Her unrelenting support of ISIS/ISIL was patently obvious in her verbatim retweets on August 24, 2015, that alerted her followers

7

of two FBI employees who were "wanted to kill" and listed these employees actual names, city, state, zip code, and phone numbers (Doc. 1-1, pg. 16, para. 37).

A well-reasoned consideration of the nature and circumstance of the charged offense as seen through the lens of the Magistrate Court reveals that release of this defendant is inappropriate. It is clear the defendant has demonstrated by her behavior that she is unwilling to control her criminal actions, and her tweets are anything but generalized statements of religious/political beliefs.

(2) <u>Weight of the Evidence</u>

As noted in the Affidavit of the Criminal Complaint (Doc. 1, pg. 6, para. 14-15), she was warned by the Federal Bureau of Investigations (FBI) on two occasions in June 2015 that her posting of ISIS/ISIL incendiary tweets via Twitter were the subject of complaints. She even acknowledge to the FBI, after viewing her internet posts with them that she could see how her intentions might have been misunderstood (Doc 1, pg. 6, para. 14). These law enforcement encounters only served to embolden the defendant and her threatening communications. She established nearly 97 twitter accounts after being shut down repeatedly by Twitter for her ISIS/ISIL online rhetoric and support of violent Jihad (Doc. 1-1, page 9, para. 19-21). She encouraged her twitter followers to take action by the use of force (Doc. 30-1, pg. 7, lines 10-12). In response to one of her associates stating she may get raided, the defendant texted, "Anyone raiding me will be shot on site." (Doc. 30-1, pg. 8, lines 23-25.) The defendant continued to publish and encourage her Twitter followers to "martyrdom" (Doc. 30-1, pg. 10, line 1-3) and "Jihad" (Doc. 30-1, pg. 11, lines 2-3). The defendant was very conscious of her nefarious motivations

8

because she stated in her private text exchanges with another sympathetic associate in February 2016 that "my posts are directed at men and Jihad a lot . . . trying to incite." (Doc. 30-1, pg. 15, lines 1-14.) The Magistrate Court had the benefit of reviewing these alarming tweets and texts by the defendant in totality and came to the conclusion that the defendant is a danger to the community (Doc. 25, pg. 2). To trivialize the defendant's criminal actions designed, as she stated, "to incite . . . Jihad" would require the Court to ignore the modern day internet battlefield of ISIS/ISIL terrorism.

Moreover, the February 28, 2013, grand jury indictment in this matter, as well as the affidavit in support of the original criminal complaint established that there is probable cause that defendant committed the charged offenses. *See United States v. Vargas*, 804 F.2d 157, 163 (1st Cir. 1986); *United States v. Dominguez*, 783 F.2d 702, 706 n.7 (7th Cir. 1986); *United States v. Hazime*, 762 F.2d 34, 37 (6th Cir. 1985).[4]

(3) History and Characteristics of the Defendant

This is not the defendant's first foray into the criminal justice system. In 2001, as the Magistrate Court pointedly established in his Order, the defendant had a prior arrest and conviction for a Threatening Crime with intent to Terrorize (Doc. 25, pg. 1). Her California conviction was serious enough that the defendant went to prison for 210 days

---

[4] The necessary probable cause finding required by § 3142(e) can be based upon a grand jury indictment. *Vargas*, 804 F.2d at 163; *Dominguez*, 783 F.2d at 706 n.7; *Hazime*, 762 F.2d at 37. This is so because the action of the grand jury "conclusively demonstrates that probable cause exists to implicate a defendant in a crime." *United States v. Suppa*, 799 F.2d 115, 118 (3rd Cir. 1986). As such, there exists "no reason to require a judicial officer to repeat a process already performed by the grand jury at the possible expense of what is the proper focus in detention hearings; the application of the presumptions and the Section 3142 factors in deciding whether the defendant should be detained." 799 F.2d at 119.

and was placed on 60 months of probation (Doc. 30-1, pg. 3-4, lines 24-25 and 1-3). This conviction alone coupled with the present charge is sufficient to find that the defendant is a danger to the community.

  (4) <u>Nature and seriousness of the danger to the Community</u>

  When the FBI attempted to execute a federal search warrant on February 18, 2016, she ran into her residence, hid in the basement and yelled to law enforcement, "I have a knife." (Doc. 30-1, pg. 16, lines 11-12.) The defendant reluctantly complied with the repeated FBI commands to raise her hands that she had hidden from law enforcement officers' view (Doc. 30-1, pg. 16, lines 12-16). As the FBI removed the defendant from the basement, they found a knife on the bed where she was sitting (Doc. 30-1, pg. 16, line 21-22). Her actions are direct evidence of how serious she is about harming others without any regard for her own safety.

  Additionally, in her motion to revoke, the defendant has presented no new information or basis upon which this Court could come to a different conclusion than the Magistrate Court. As such, there is no reasonable basis upon which to conclude that the rebuttable presumption in favor of detention or the imposition of conditions of release in this matter will ensure the safety of the community.

## IV. CONCLUSION

Accordingly, for the foregoing reasons and authorities, the Detention Order of Magistrate Judge David P. Rush should be affirmed.

                              Respectfully submitted,

                              Tammy Dickinson
                              United States Attorney

        By       */s/ Abram McGull II*
                    Abram McGull II
                    Assistant United States Attorney
                    Missouri Bar No. 40553
                    500 Hammons Tower
                    901 St. Louis Street
                    Springfield, Missouri 65806
                    (417) 831-4406

## ***CERTIFICATE OF SERVICE***

The undersigned hereby certifies that a copy of the foregoing was delivered on March 30, 2016, to the CM-ECF system of the United States District Court for the Western District of Missouri for electronic delivery to all counsel of record.

*/s/ Abram McGull II*
_____
Abram McGull II
Assistant United States Attorney