IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

          Plaintiff,

v.

          No. 16-03024-01-CR-S-MDH

SAFYA ROE YASSIN,

          Defendant.

## UNITED STATES' SUGGESTIONS IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS INDICTMENT

### I. Introduction

The United States of America, through the undersigned attorneys, requests that the Court deny the Defendant's Motion to Dismiss Indictment. (Doc. 71.) While the defendant does not cite a rule under which relief is sought, she moves to dismiss the indictment (Doc. 18) pursuant to Fed. R. Crim. P. 12(b)(3) for a defect in the indictment. However, the sufficiency of an indictment is determined on the face of that document, without appeal to any facts not contained within its four corners. The defendant unsuccessfully utilizes misleading citations and outside information to claim the indictment fails to state an offense.

As shown below, the count challenged in Doc. 71 sufficiently states an offense, and the defendant's motion should be denied. But even if this Court were to consider information outside of the indictment, as the defendant attempts to do, the motion still fails, because when viewing the context of the communication, that communication

1

undoubtedly communicated a true threat; the statute is not unconstitutionally overbroad; and the statute puts a reasonable person on notice as to what speech that statute proscribes. For the reasons stated below, the defendant's motion should be denied.

## II. <u>STATEMENT OF THE CASE</u>

On February 17, 2016, a criminal complaint, alleging a violation of Title 18, United States Code, Section 875(c), was filed against the defendant (Doc. 1.)[1] charging the defendant with transmitting in interstate commerce communications containing a threat to injure the person of another on or about August 24, 2015. On February 23, 2016, a grand jury in the Western District of Missouri returned a one-count indictment charging defendant Yassin with communicating an interstate threatening communication in violation of 18 U.S.C. §§ 875(c) and 2.

The indictment states in full the following:

On or about August 24, 2015, in the Western District of Missouri, and elsewhere, defendant SAFYA ROE YASSIN, with the intent to threaten, and with knowledge that the communication would be viewed as a threat, knowingly transmitted in interstate and foreign commerce via the Internet, a communication containing a threat to injure the person of another, that is, a communication with the explicit phrase "Wanted to kill" followed by the first and last name, status as an employee of the Federal Bureau of Investigation, city of residence, zip code, and phone number of Victim 1, and then, in the same communication, repeated the same explicit "Wanted to kill" phrase followed by the first and last name, status as an employee of the Federal Bureau of Investigation, city of residence, zip code, and phone number of Victim 2.

All in violation of Title 18, United States Code, Sections 875(c) and 2.

---

[1]"Doc" – All references to Document (Doc) are items listed in Criminal Docket Sheet for Case # 6:16-cr-03024-MDH-1

2

On July 19, 2016, a grand jury returned a superseding indictment charging the defendant with one count of conspiracy to solicit a crime of violence in violation of 18 U.S.C. § 371 (Count One) and two counts of communicating an interstate threatening communication in violation of 18 U.S.C. §§ 875(c) and 2 (Counts Two and Three). Count Two alleges the same violation as alleged in the sole count of the original indictment. These Suggestions in Opposition apply to the defendant's motion to dismiss the original indictment (Doc. 18.)[2]

## III. <u>DISCUSSION</u>

The Fifth Amendment's guarantee of the right to indictment by a grand jury, and the Sixth Amendment's guarantee that a defendant be informed of the nature of the charges against her establish the minimum requirements for a federal criminal indictment. Those Constitutional requirements are implemented in Rule 7 of the Federal Rules of Criminal Procedure, which provides that an indictment "must be a plain, concise, and definite written statement of the essential facts constituting the offense charged." Fed. R. Crim. P. 7(c)(1).

An indictment is sufficient if "it contains all of the essential elements of the offense charged, fairly informs the defendant of the charges against which he must

---

[2]The superseding indictment (Doc. 73) returned by a federal grand jury on July 19, 2016 adds two additional charges against the defendant. Count 1 of the superseding indictment charges the defendant with conspiring with persons she believes to be members or followers of the Islamic State of Iraq and the Levant (ISIL) with solicitations of violence against current and former officers and employees of the United States. Count 2 of the superseding indictment is a facsimile of Doc. 18. Count 3 alleges a new 875(c) charge of different victims that the defendant sent threatening communications over the internet on or about October 8, 2015.

Case 6:16-cr-03024-MDH   Document 83   Filed 08/11/16   Page 3 of 21

defend, and alleges sufficient information to allow a defendant to plead a conviction or acquittal as a bar to a subsequent prosecution." *United States v. Hayes*, 574 F.3d 460, 472 (8th Cir. 2009) (quoting *United States v. Sewell*, 513 F.3d 820, 821 (8th Cir. 2008); *see also Hamling v. United States*, 418 U.S. 87, 117 (1974). "An indictment will ordinarily be held sufficient unless it is so defective that it cannot be said, by any reasonable construction, to charge the offense for which the defendant was convicted." *Hayes*, 574 F.3d at 472. "An indictment [that] 'tracks the statutory language' is ordinarily sufficient." *United States v. Tebeau*, 713 F.3d 955, 962 (8th Cir. 2013) (quoting *Sewell*, 513 F.3d at 821).

In reviewing the sufficiency of an indictment, a Court accepts "the government's allegations as true, without reference to allegations outside the indicting document." *United States v. Farm & Home Sav. Ass'n*, 932 F.2d 1256, 1259 n.3 (8th Cir. 1991) (*citing Boyce Motor Lines, Inc. v. United States,* 342 U.S. 337, 343 & n. 16 (1952)); *see also United States v. Velastegui*, 199 F.3d 590, 592 n.2 (2d Cir. 1999) (in reviewing the sufficiency of an indictment "the facts alleged by the government must be taken as true"). There is "no equivalent in criminal procedure to the motion for summary judgment that may be made in a civil case," *United States v. Nabors*, 45 F.3d 238, 240 (8th Cir. 1995), and "federal criminal procedure does not 'provide for pre-trial determination of sufficiency of the evidence.'" *United States v. Ferro*, 252 F.3d 964, 968 (8th Cir. 2001) (quoting *United States v. Critzer*, 951 F.2d 306, 307-08 (11th Cir. 1992). As the Eighth Circuit stated in *Ferro*:

> In civil cases, of course, the summary judgment procedures contemplated by Federal Rule of Civil Procedure 56 may be utilized to test, pretrial, the sufficiency of the evidence to establish triable issues of fact; but there is no corollary in criminal cases. The government is entitled to marshal and present its evidence at trial, and have its sufficiency tested by a motion for acquittal pursuant to Federal Rule of Criminal Procedure 29. . .. [W]e simply cannot approve dismissal of an indictment on the basis of predictions as to what the trial evidence will be.

*Ferro*, 252 F.3d at 968 (quoting *United States v. DeLaurentis*, 230 F.3d 659, 661 (3d Cir. 2000)).

The defendant does not claim that the indictment fails to track the statutory language or that it fails to adequately allege the elements of the charges against her. Rather, the defendant ignores the explicit allegation that she acted "with the intent to threaten, and with knowledge that the communication would be viewed as a threat" in arguing, for a number of reasons that the indictment is deficient, because it does not allege that she had an intent to threaten. It simply does, and on that ground alone, the defendant's motion to dismiss should be denied. Moreover, the defendant's motion to dismiss appears to be a civil motion for summary judgment, which does not exist in a criminal case, and that alone provides an independent ground for denying her motion. While the defendant chooses to ignore it, a grand jury found probable cause that on or about August 24, 2015, she violated 18 U.S.C. § 875(c). Count One of the original indictment tracks the statutory language and provides the defendant notice of what charge she must defend against. If she would like to contest that charge, she can do so at trial. There is no defect in this count against her, and for the reason explained below, her motion to dismiss that count should be denied.

**A.** _Defendant's Statements Constitute True Threats and Do Not Violate the First Amendment_

The United States wholeheartedly agrees that the First Amendment requires that the defendant must communicate a "true threat" to be guilty of violating 18 U.S.C. § 875(c). See, e.g., _United States v. Mabie_, 663 F.3d 322, 330 (8th Cir. 2011) (holding that a "true threat is defined as a statement that a reasonable recipient would have interpreted as a serious expression of an intent to harm or cause injury to another") (quotations omitted). Whether the communication in question constitutes a "true threat," however, is a matter the jury must decide after hearing the evidence at trial and cannot be decided on the face of the indictment. The defendant's argument that the indictment does not allege a true threat blatantly brings facts not present in the indictment and not appropriate for a motion to dismiss under Rule 12(b)(3). The grand jury found probable cause that the communication violated the statute, and the United States is allowed to put on its evidence at trial to prove the offense. Nothing in the defendant's motion undermines those bedrock facts of federal criminal law, and her motion should be denied.

The defendant erroneously claims that because the communication is shared via Twitter it is immune from First Amendment limitations. However, in the Constitution's Commerce Clause, (U.S. Const. Art. 1, § 8, cl. 3), Congress is given the power to regulate interstate commerce, and the Eighth Circuit has reiterated that "the Internet is an instrumentality and channel of interstate commerce." _United States v. Trotter_, 478 F.3d 918, 921 (8th Cir. 2007) (_citing United States v. MacEwan_, 445 F.3d 237, 245 (3d Cir. 2006) (internal quotations omitted)). The defendant also claims that because the tweets

6

are "not stated in first person" that they do not constitute a true threat. (Defendant's Motion to Dismiss at 8.) Yet, the defendant cites no case law supporting the allegation that "shared" or "retweeted" images via Twitter do not qualify as "communications" under 18 U.S.C. § 875(c). In fact, the Supreme Court has stated that the term "speech" incorporates the "communication of information, the dissemination and propagation of views and ideas, and the advocacy of causes." *Village of Schaumburg v. Citizens for a Better Env.*, 444 U.S. 620, 632 (1980). Clearly, communications on Twitter are subject to both First Amendment protections and limitations, as the defendant acknowledges that "[t]he ideas, opinions, emotions, actions, and desires capable of *communication* through the Internet are limited only by the human capacity for expression" and "First Amendment protections . . . must apply with full force to speech conducted online." (Defendant's Motion to Dismiss at 9.) (emphasis added).

Evidently, the defendant recognizes Twitter as a platform for communication to the masses. Accordingly, if a communication is subject to the possibility of First Amendment protections, it must be subject to the possibility of First Amendment limitations as well, as the Supreme Court has made it clear that protections are not absolute, and the internet is not immune from Congressional regulation. Furthermore, courts have not abandoned limitations based on the particular medium or platform they are presented on, and look at the content of the questioned speech. (*See U.S. v. X-Citement Video*, Inc., 513 U.S. 64, 65 (1994) (upholding ban of visual depictions of minors engaged in sexual conduct in film); *New York v. Ferber*, 458 U.S. 747, 749 (1982) (upholding ban of visual depictions of minors engaged in sexual conduct in photographs);

7

*U.S. v. Stock*, 728 F.3d 287, 290 (3d Cir. 2013) (upholding 18 U.S.C. § 875(c) conviction from Craigslist postings); *U.S. v. Jongewaard*, 567 F.3d 336, 338 (8th Cir. 2009) (upholding 18 U.S.C. § 875(c) conviction based on phone calls); *U.S. v. Abdulkadir*, 016CR00002KESVLD, 2016 WL 659711, at *1 (D. Minn. Feb. 18, 2016) (upholding 18 U.S.C. § 875(c) conviction based on Twitter postings)). There is no caselaw suggesting that "retweeted" or unoriginal content is protected by the First Amendment, because it is the distribution and promulgation of the communication in question- not the origin of creation.

In a case decided prior to *Elonis v. U.S.*, 135 S. Ct. 2001, 2012 (2015), the Eighth Circuit held that the test for an 875(c) conviction can be condensed into three essential elements:

> (1) [Defendant] caused a transmission to be made in interstate commerce;
> (2) he did so knowingly; and (3) the transmission contained a threat to
> injure the person of another."

*U.S. v. Nicklas*, 713 F.3d 435, 440 (8th Cir. 2013). The Supreme Court, however, has recently clarified that "[18 U.S.C. § 875(c)] is satisfied if the Defendant transmits a communication for the purpose of issuing a threat, or with knowledge that the communication will be viewed as a threat." *Elonis*, 135 S. Ct. at 2012. Additionally, the Court noted that "the crucial element . . . is the threatening nature of the communication. The mental state requirement [is] that the communication contains a threat." *Id.* at 2011 (citation omitted) (quotation omitted). For that reason, the original indictment and now Count Two explicitly state that the defendant, "with the intent to threaten, and with knowledge that the communication would be viewed as a threat, knowingly transmitted"

8

the charged threat. Tellingly, the defendant's motion leaves this language out of recitation of the charge. (Doc. 71 at 2.) The defendant then goes on to argue that the charge unconstitutionally reaches protected speech because it does not allege an intent to threaten. This assesrtion is simply wrong, and the defendant's motion fails for that very reason.

As the language of Count One in the original indictment sufficiently puts the defendant on notice about the nature of the charge against her, the United States should be allowed to proceed to trial on that charge. If the defendant believes that after the evidence is heard it does not prove a "true threat," then a motion under Rule 29 can be made to the Court for relief; but the Eighth Circuit has consistently held that "[i]f a reasonable recipient, familiar with the context of the communication, would interpret it as a threat, the issue should go to the jury." *Martin v. U.S.*, 691 F.2d 1235, 1240 (8th Cir. 1982). Moreover, the Eighth Circuit has echoed that the determination of a true threat consists of whether "a reasonable recipient would have interpreted as a serious expression of intent to harm or cause injury to another." *U.S. v. Mabie*, 663 F.3d 322, 330 (8th Cir. 2011) (*quoting Doe v. Pulaski Cty. Special Sch. Dist.*, 306 F.3d 616, 624 (8th Cir. 2002) (internal quotations omitted)). Furthermore, the Eighth Circuit has noted the importance of viewing the "textual context and . . . the context of the totality of the circumstances in which the communication was made.'" *U.S. v. Nicklas*, at 440. (*citing United States v. Floyd*, 458 F.3d 844, 848 (8th Cir. 2006) (*quoting United States v. Bellrichard*, 994 F.2d 1318, 1323 (8th Cir. 1993)). The defendant concedes this point, yet is mistaken in its application. (Defendant's Motion to Dismiss at 13.)

9

The defendant does not want to acknowledge this reality and instead argues context in the motion to dismiss, alternately arguing facts outside of the indictment and faults the indictment for failing to allege facts that is not required. Despite the defendant's claims to the contrary, no court has ever held that there is a heightened pleading standard for violations of 18 U.S.C. § 875(c). (See, e.g. Doc. 71 at 20 ("there is no allegation by the government that anyone had any serious reaction or took any action as a result of Ms. Yassin's re-tweeting of those statements"), and at 22 ("in this case there is no additional or circumstantial evidence of threat"). Despite the defendant's protestations, the general law applies to this statute, and a charge that follows the statutory language suffices. Nonetheless, the superseding indictment adds allegations to the charging document that do fill in the non-existent holes the defendant tries to dig. As the superseding indictment makes clear, the threat was made in the context of support of ISIL and was made specifically to an audience of ISIL followers. That is enough context to grasp why the communication was a true threat, and as the defendant is aware, the evidence at trial will be that the victims most certainly felt threatened by the release of their information by ISIL.

The defendant's claim that the indictment must be dismissed because it does not allege a particular effect on the victims ignores case law that clearly determines it does not matter whether any of the alleged victims actually viewed the defendant's posts in order for those posts to constitute threats against those victims. As the Sixth Circuit has noted, Section 875(c) "does not require a threat to be communicated to its target." *United States v. Jeffries*, 692 F.3d 473, 483 (6th Cir. 2012) (upholding a conviction where the

defendant, while engaged in a child custody dispute, posted a music video on YouTube threatening to kill the judge). *See also United States v. Spring*, 305 F.3d 276, 279 (4th Cir. 2002) ("[A] statement may qualify as a threat even if it is never communicated to the victim."). The Seventh Circuit has similarly rejected an argument with respect to 18 U.S.C. § 876 (which prohibits sending threats through the mail) that the statute was inapplicable because the defendant "did not send the letter to [the victim] or directly communicate the threat to her." *United States v. Siegler*, 272 F.3d 975, 978 (7th Cir. 2001). These Circuits, without directly addressing the issue, have upheld § 875(c) convictions where the communications were never alleged to have been intended to reach the victim.

Moreover, the defendant cannot use her self-serving claims that the charged communication in the indictment that is now Count Two in the superseding indictment, which stated that two employees of the FBI were "Wanted To Kill," was mere political rhetoric or that she was reporting the news. The Eighth Circuit has held that "a person may not escape prosecution for uttering threatening language merely by combining the threatening language with issues of public concern." *United States v. Christenson,* 653 F.3d 697, 701 (8th Cir. 2011) (quotations omitted). As alleged in the superseding indictment, the defendant posted the threats on behalf of ISIL. She is not merely reporting what ISIL did or stated, she is actively supporting ISIL in its efforts to threaten to injure another person.

But if the defendant wants to go beyond the four corners of the indictment, her motion fails all the same, because the contextual evidence against her is strong. The

evidence revealed that the defendant was unrelenting in her support of The Islamic State of Iraq and Syria/the Levant (ISIS/ISIL), a designated foreign terrorist organization. The defendant has supported the violent group's actionable orders to encourage "lone wolves" to commit violent acts. (Doc. 1-1, pg. 13, para. 34.) Even a visit by the Federal Bureau of Investigations in June 2015 did not discourage the defendant in her dogmatic pursuit to render support to ISIS/ISIL. As noted on her Twitter post on August 12, 2015, she informed her followers that the names and addresses of U.S. military were available, and she posted eight photographs of United States service members along with personal contact information for each person. On that very same day, and in response to another Twitter user that stated she might be raided, the defendant posted, "anyone raiding me will be shot on site." (Doc. 1-1, page 13, para. 31; Doc. 30-1, page 8 of 37, line 23-25.) Her virulent diatribe continued with an August 19, 2015, Twitter posting of the names of 150 United States Air Force personnel that listed these service members' towns of residence and phone numbers. That same link encouraged her Twitter followers to

> ". . . Rejoice, O supporters of the Caliphate State, with the dissemination of the information to be delivered to lone wolves. God said: And *slay them* wherever you may come upon them."

(Doc. 1-1, pg. 14, para. 34.) (emphasis added).

Her unrelenting support of ISIS/ISIL was patently obvious in her verbatim retweets on August 24, 2015, that alerted her followers of two FBI employees who were "wanted to kill" and listed these employees actual names, city, state, zip code, and phone numbers. (Doc. 1-1, pg. 16, para. 37.) The defendant's course of conduct, as reflected by these examples, more than establishes the threatening nature of these communications.

Although the defendant purports that no reasonable person would understand that the words constituted a threat, it is objectively obvious from the totality of the circumstances that these communications contained threats. In fact, in one bone-chilling discussion that the defendant had with one of her associates, she texted her true emotions behind her Twitter postings that is: " . . . Muslim men everywhere and hardly any attacks . . . My posts are directed at men and jihad a lot." (Doc. 30-1, pg. 15 of 37, line 1-14.) This evidence clearly shows the defendant's unabated intentions to encourage her Twitter followers to launch attacks in the United States. Although "wanted to kill" may be grammatically incorrect or awkward, it nevertheless invokes well-known themes made famous by "wanted" posters of the Old West or ongoing military or law enforcement operations. That classic imagery, which often designated persons as "Wanted: to kill" or "Wanted: to capture" conveyed a simple message, that the person named should be killed or captured. Simply because the defendant's communication lacked a similar punctuation mark does not make it any less clear. Given the violent context in which the defendant's statements were made, a reasonable person would certainly view that unartful language as a threat, just as the grand jury did.

The defendant has argued to this Court that context is everything in this case. And that is correct, when this case goes to trial and a jury decides whether her communication was a true threat, context will be everything. As alleged in the superseding indictment (Doc. 73.), the defendant worked extremely hard to create and maintain an anonymous internet persona that whenever suspended, would come back time and time again in a manner where numerous followers would find her to continue to receive her exhortations

to violence. The defendant has demonstrated her tweets are anything but generalized statements of religious/political beliefs, and are in fact a serious expression of intent to commit an act of unlawful violence to a particular individual or group of individuals, constituting a true threat. Therefore, because the indictment properly contains a true threat, it satisfies the charged offense, thus the defendant's motion to dismiss should be denied.

The defendant cites a single case where an appellate court affirmed the pre-trial dismissal of an indictment, *United States v. Alkhabaz*, 104 F.3d 1492 (6th Cir. 1997), but in that case, the court did precisely what the Eighth Circuit has held that a court cannot do: the court ignored the Constitutional significance of the grand jury's finding of probable cause and considered facts outside the four corners of the charging instrument. In addition, the defendant does not include in her motion that in *United States v. Jongewaard*, 567 F.3d 336, 340 (8th Cir. 2009), the Eighth Circuit explicitly rejected the Sixth Circuit's reasoning in *Alkhabaz*. The Eighth Circuit calls *Alkhabaz* a "controversial decision" and notes that "no other circuit has adopted the Sixth Circuit's narrow interpretation of § 875(c)." *Id.* Despite spending over three pages, or more than 10 percent, of her motion discussing *Alkhabaz*, the defendant ignores the fact that the *Alkhabaz* Court repeatedly bases its decision on the posts being private, where the posts in this case were purposefully public, and the fact that the *Alkhabaz* decision is likewise based on the Sixth Circuit's invention of an additional element for a violation of § 875(c) – regarding intimidation – that is not present in the statute and the Eighth Circuit has

unequivocally rejected.  Simply put, *Alkahabaz* is not good law, and this Court should disregard it.

Lastly, the defendant attempts to graft a requirement onto a violation of 18 U.S.C. § 875(c) that is not found in either the statute or any case interpreting it: that to violate the statute the alleged threat must be of harm from the person making the communication. (See, e.g., Doc. 71 at 11.)  Again, the defendant's failure to accurately quote a one-paragraph charge fatally dooms this claim, as the defendant was charged with violating not only § 875(c) but also § 2, which prohibits aiding an abetting the crimes of another. While the defendant is simply wrong that the threatened harm must be harm from her, that is irrelevant here because the charge itself allows that the defendant can be found guilty for assisting another in making threats.

### B. 18 U.S.C. § 875(c) Is Not Unconstitutionally Overbroad

The defendant contends 18 U.S.C. § 875(c) is unconstitutionally overbroad on its face. Facial application of the overbreadth doctrine is "manifestly, strong medicine," and "employed by the Court sparingly and only as a last resort." *Broadrick v. Okla.*, 413 U.S. 601, 613 (1973). Further, courts apply a presumption of constitutionality to challenged statutes. *United States v. Sutcliffe*, 505 F.3d 944, 953 (9th Cir. 2007). A facial challenge under the First Amendment may succeed either when "no set of circumstances exists under which the [law] would be valid," or when "the law is 'overbroad because a substantial number of its applications are unconstitutional, judged in relation to the [law's] plainly legitimate sweep.'" *United States v. Marcavage*, 609 F.3d 264, 273 (3d Cir. 2010) (quoting *Wash. State Grange v. Wash. State Republican Party*, 552 U.S. 442,

449 (2008)). Here, Yassin argues the statute is unconstitutional in that it implicates a substantial amount of protected expression.

The first step of an overbreadth analysis is to construe the challenged statute, in order to determine what it covers. *United States v. Williams*, 553 U.S. 285, 293 (2008). Yassin's motion acknowledges that courts have limited application of the statute to "true threats." *Watts v. United States*, 394 U.S. 705, 708 (1969). True threats "encompass those statements where the speaker means to communicate a serious expression of an intent to commit an act of unlawful violence to a particular individual or group of individuals." *Virginia v. Black*, 538 U.S. 343, 359 (2003). This limitation is well-established in case law, weakening any possibility for a successful overbreadth challenge to 18 U.S.C. § 875(c). *See Broadrick*, 413 U.S. at 602 ("Facial overbreadth has not been invoked when a limiting construction has been or could be placed on the challenged statute."). The "true threat" limitation narrows the application of such statutes to exclude "political hyperbole," or other language that "may well include vehement, caustic, and sometimes unpleasantly sharp attacks on government and public officials," while falling short of a true threat. *Watts*, 394 U.S. at 708 (quoting *New York Times Co.* v. *Sullivan*, 376 U.S. 254, 270 (1964)); *see also United States v. Musgrove*, 845 F. Supp. 2d 932, 937 (E.D. Wis. 2011) ("Without that [true threat] element, the statute would be constitutionally overbroad because it would essentially criminalize constitutionally protected speech."). In short, because of the true threat doctrine, § 875(c) is not overbroad, rather it only applies to speech that is not entitled to First Amendment protections.

After construing a challenged statute, courts must determine whether it criminalizes a substantial amount of protected expressive activity. The defendant sets forth several types of expression, including trash-talk before boxing matches and media coverage of threats made by others, that she argues would be proscribed by 18 U.S.C. § 875(c). The defendant does not cite to any case, and the undersigned is not aware of any case, where such conduct has been charged under the statutes. The defendant's assertions are built on mere hypotheticals, and those hypotheticals collapse under the weight the defendant asks them to bear. A television network transmitting the trash talk of a boxer does not do so with the intent that the communication be viewed as a threat (i.e., the mens rea that is required by *Elonis* and that the grand jury found probable cause for in this case), and the statement does not make a reasonable viewer fear bodily injury, as required of a true threat. The defendant's hypotheticals provide no reason to believe the statute extends to any lawful speech. In raising a facial challenge, the defendant is required to show a "realistic danger" that a statute will impinge the First Amendment rights of parties not before the court, and "[t]he fact that a court can hypothesize some deterrent effect on protected speech is insufficient for overbreadth purposes." *Shackelford v. Shirley*, 948 F.2d 935, 940 (5th Cir. 1991). The defendant's hypotheticals make no showing that lawful conduct could be reached by the statute, ignore the limitations placed on the statute by both *Elonis* and the true threat doctrine, and provide no basis for finding the statute overbroad.

The Eighth Circuit has not considered an overbreadth challenge to § 875(c), but has considered such a challenge to the very similar statute 18 U.S.C. § 876, which

17

prohibits mailing threatening communications. In *Mabie*, the Eighth Circuit held that § 876 is not overbroad, in principal part because it was limited to true threats. 663 F.3d at 332-33. While *Mabie* was a Pre-*Elonis* case that held that the government was not required to prove a specific intent to threaten, its reasoning is only stronger now that the threat statutes do require that specific intent, which is alleged in the charge the defendant has moved to dismiss. This gives all the more reason why the defendant's claim that the statute is unconstitutionally overbroad fails and her motion should be denied.

Yassin's argument that 18 U.S.C. § 875(c) is facially overbroad fails because (1) courts have consistently limited application of 18 U.S.C. § 875(c) to true threats; and (2) Yassin does no more than hypothesize about the statute's possible reach into lawful expression.

### C. *18 U.S.C. § 875(c) Is Not Unconstitutionally Vague*

In her final point, the defendant argues 18 U.S.C. § 875(c) is unconstitutionally vague. A statute is unconstitutional when it is "so vague that it fails to give ordinary people fair notice of the conduct it punishes, or so standardless that it invites arbitrary enforcement." *Johnson v. United States*, 135 S. Ct. 2551, 2556 (2015).

The defendant's vagueness challenge is partially premised on the Supreme Court's "acknowledgment" of the statute's vagueness in *Elonis*. Yassin relies particularly on Justice Alito's opinion, concurring in part and dissenting in part, in which he lamented the majority's failure to specify the mens rea required for conviction under Section 875(c). Chief Justice Roberts, writing for the majority, responded to this argument:

> [N]egligence is not sufficient to support a conviction under Section 875(c), contrary to the view of nine Courts of Appeals. There was and is no circuit conflict over the question Justice Alito and Justice Thomas would have us decide—whether recklessness suffices for liability under Section 875(c). No Court of Appeals has even addressed that question.

*Elonis*, 135 S. Ct. at 2013. Nowhere does the Court reach the argument that the statute may be so vague as to render it facially invalid. Other courts, however, have expressly held it is not so vague: "[W]e are convinced that the statute is not impermissibly vague. An ordinary citizen can understand what is meant by the terms 'threat to kidnap' and 'threat to injure,' and we are persuaded that the statute provides sufficient standards to allow enforcement in a non-arbitrary manner." *Sutcliffe*, 505 F.3d at 954.

The defendant further argues the statute is vague because it contains no definition of "threat," and the only guidance on this point has come from the courts. The opposite is true. This guidance is, in fact, binding case law in lower courts, and "the narrowing construction provided by the relevant cases actually alleviates possible void-for-vagueness concerns." *Id.* at 953; *see also United States v. Vaksman*, 2009 U.S. Dist. LEXIS 119287, *10 (E.D. Wash. Dec. 4, 2009) ("The term 'threat' is perhaps vague as a term of art existing in a vacuum, but case law has interpreted its meaning and differentiated between hyperbole or exaggeration and 'true threats.' Courts may look to such interpretations when determining whether a statute is unconstitutionally vague.").

Yassin cites no case law in support of the notion that 18 U.S.C. § 875(c) is so vague as to be facially invalid. The Supreme Court made no such assertion in *Elonis*, and the Ninth Circuit has expressly held that the statute is sufficiently clear. Much like the defendant's overbreadth argument, it is only upon ignoring the restrictions placed on the

statute by *Elonis* and the true threat doctrine that the defendant can even begin to make an argument. But the defendant ignores that which makes the statute constitutional at her own peril, and her motion should be denied.

### IV. CONCLUSION

The United States of America, through Tammy Dickinson, United States Attorney for the Western District of Missouri, requests that the Court deny the Defendant's motion to dismiss the original indictment. Because the alleged communications are not protected by the First Amendment, do constitute true threats, are not unconstitutionally overbroad, and do put a reasonable person on notice as to what speech that statute proscribes, the motion should be denied.

Respectfully submitted,

Tammy Dickinson
United States Attorney

By     */s/ Brian Casey*
Brian Casey

*/s/ Abram McGull II*
Abram McGull II
Assistant United States Attorneys

500 Hammons Tower
901 St. Louis Street
Springfield, Missouri 65806
(417) 831-4406

## _CERTIFICATE OF SERVICE_

  The undersigned hereby certifies that a copy of the foregoing was delivered on August 11, 2016 to the CM-ECF system of the United States District Court for the Western District of Missouri for electronic delivery to all counsel of record.


          _/s/ Abram McGull II_
          _____
          Abram McGull II
          Assistant United States Attorney