# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF MISSOURI
# SOUTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | Case No. 16-03024-01-CR-S-MDH |
| SAFYA ROE YASSIN, | ) ) ) | |
| Defendant. | ) | |

## **REPORT & RECOMMENDATION OF U.S. MAGISTRATE JUDGE**

Pursuant to 28 U.S.C. § 636(b), the above-styled criminal action was referred to the undersigned for preliminary review. Defendant Yassin has filed a Motion to Dismiss the Indictment, (Doc. 71), and a Motion to Dismiss the Superseding Indictment for Vindictive Prosecution, (Doc. 78). For the reasons set forth below, it is hereby **RECOMMENDED** that Defendant's Motions, (Docs. 71 and 78), be **DENIED**.

## I.  Background[1]

On February 17, 2016, a criminal complaint alleging a violation of 18 U.S.C. § 875(c) was filed against Defendant. (Doc. 1.) It charged Defendant with transmitting interstate commerce communications containing a threat to injure the person of another on or about August 24, 2015. (*Id.*) On February 23, 2016, a grand jury in the Western District of Missouri returned a one-count indictment charging Defendant with transmitting an interstate threatening communication in violation of 18 U.S.C. §§ 875(c) and 2. (Doc. 18.) The one-count indictment stated the following:

> On or about August 24, 2015, in the Western District of Missouri, and elsewhere, defendant SAFYA ROE YASSIN, with the intent to threaten, and with knowledge

---

[1] The facts relevant to the Motion to Dismiss the Superseding Indictment for Vindictive Prosecution, (Doc. 78), are enumerated in the discussion on that matter.

that the communication would be viewed as a threat, knowingly transmitted in interstate and foreign commerce via the Internet, a communication containing a threat to injure the person of another, that is, a communication with the explicit phrase "Wanted to kill" followed by the first and last name, status as an employee of the Federal Bureau of Investigation, city of residence, zip code, and phone number of Victim 1, and then, in the same communication, repeated the same explicit "Wanted to kill" phrase followed by the first and last name, status as an employee of the Federal Bureau of Investigation, city of residence, zip code, and phone number of Victim 2.

All in violation of Title 18, United States Code, Sections 875(c) and 2.

(Doc. *Id.*)

On July 8, 2016, Defendant sought leave to file motions out of time. (Doc. 68.) The Government did not oppose that motion, and the Court granted it on July 11, 2016. (Docs. 69 and 70.) On that same day, Defendant filed her first Motion to Dismiss the Indictment. (Doc. 71.) On July 19, 2016, a grand jury returned a Superseding Indictment charging Defendant with one count of conspiracy to solicit a crime of violence in violation of 18 U.S.C. § 371, and two counts of transmitting an interstate threatening communication in violation of 18 U.S.C. §§ 875(c) and 2. (Doc. 73.) Count One states the following:

<u>The Conspiracy and its Objects</u>

    1. Beginning in or before at least May 2015, the exact date unknown to the grand jury, until on or about February 18, 2016, in the Western District of Missouri, and elsewhere, defendant SAFYA ROE YASSIN knowingly conspired and agreed with one or more other persons to commit an offense against the United States, that is: to commit the crime of solicitation to commit a crime of violence in violation of Title 18, United States Code, Section 373.

<u>Manner and Means of the Conspiracy</u>

    2. It was part of the conspiracy that YASSIN and one or more other persons would maintain Twitter accounts to provide information that they believed to be from the Islamic State of Iraq and the Levant (ISIL) to followers on Twitter, including threats and solicitations of violence against certain United States law enforcement employees and current and former servicepersons in the United States military.

2

3. It was further part of the conspiracy that when Twitter would suspend an account for violations of its terms of service, YASSIN and one or more other persons would create new accounts in a manner that could be readily identified such that followers of prior accounts could find the new accounts.

4. It was further part of the conspiracy that when new accounts were established, YASSIN and one or more other persons would promote the newly created Twitter accounts of other co-conspirators to maintain a constant presence of Twitter accounts providing information that they believed to be from ISIL, including threats and solicitations of violence against current and former officers and employees of the United States, for interested followers despite Twitter's constant suspension of accounts posting such content.

Overt Acts

5. In furtherance of the conspiracy and to effect the objects of the conspiracy, YASSIN committed and caused to be committed the overt acts listed in paragraphs 6 through 7, among others, in the Western District of Missouri, and elsewhere.

6. On or about August 24, 2015, YASSIN, posted on Twitter a message previously posted by another user with the explicit phrase "Wanted to kill" followed by the first and last name, status as an employee of the Federal Bureau of Investigation, city of residence, zip code, and phone number of Victim 1, and then, in the same communication, repeated the same explicit "Wanted to kill" phrase followed by the first and last name, status as an employee of the Federal Bureau of Investigation, city of residence, zip code, and phone number of Victim 2.

7. On or about October 8, 2015, YASSIN, posted on Twitter a message previously posted by another user that contained a link to a document with the name and home address for a former United States service member Victim 3, photos of Victim 3 with his family, and the names of Victim 3's spouse and children along with the explicit phrase "to eventually hunt him down & kill him." The document also contained the name and home address of Victim 4, a former United States service member who had been the previous target of solicitations to commit a crime of violence and threats on social media.

All in violation of Title 18, United States Code, Section 371.

(*Id.*) Count Two of the Superseding Indictment incorporates paragraphs 2 through 7 and then states the same allegations that appeared in the original indictment. (*See id.*) Count Three of the Superseding Indictment incorporates paragraphs 2 through 7 and then provides:

3

On or about October 8, 2015, in the Western District of Missouri, and elsewhere, defendant SAFYA ROE YASSIN, with the intent to threaten, and with knowledge that the communication would be viewed as a threat, knowingly transmitted in interstate and foreign commerce via the Internet, a communication containing a threat to injure the person of another, that is, a communication containing a link to a document with the name and home address for a former United States service member Victim 3, photos of Victim 3 with his family, and the names of Victim 3's spouse and children along with the explicit phrase "to eventually hunt him down & kill him," as well as the name and home address of Victim 4, a former United States service member who had been the previous target of threats.

All in violation of Title 18, United States Code, Sections 875(c) and 2.

(*Id.*)

## II. Discussion

### a. Motion to Dismiss the Indictment

In her first Motion, Defendant makes four arguments as to why the Superseding Indictment[2] should be dismissed. First, she contends that the Indictment fails to state an offense because the communications alleged do not constitute "true threats." Second, she contends that the Indictment fails to state an offense because it does not allege that Defendant subjectively intended to convey a "true threat" to injure the person of another. Third, she argues that 18 U.S.C. § 875(c), the statute that the Indictment states Defendant allegedly violated, is unconstitutionally overbroad. Defendant also contends that the law is unconstitutionally vague because it fails to put a reasonable person on notice as to what speech the statue proscribes. Finally, Defendant argues that the conspiracy charge in Count One cannot stand as a matter of law. The Government argues that the Indictment is sufficient on its face. Additionally, the

---

[2] As noted, the original indictment only charged one count of making an interstate threatening communication in violation of 18 U.S.C. §§ 875(c) and 2, which Defendant moved to dismiss, (*see* Doc. 71). The Court notes that the Superseding Indictment was filed after Defendant filed that first Motion to Dismiss. However, Defendant's reply suggestions to the Motion to Dismiss, (Doc. 83), apply her arguments to Counts Two and Three of the Superseding Indictment and made new arguments regarding Count One of the Superseding Indictment. Therefore, Defendant's arguments will be analyzed as going to the Superseding Indictment, as well as the original indictment. For that reason, unless otherwise specified, "the Indictment" refers to the Superseding Indictment for the purposes of this recommendation, though the analysis applies equally to the one-count original indictment.

4

Government contends that Defendant's statements, as stated in the Indictment, constitute true threats; thus, the prosecution of her under the § 875(c) does not run afoul First Amendment protections. Moreover, the Government argues that § 875(c) is neither overbroad nor vague. The Court takes up these arguments below.

In considering a motion to dismiss an indictment under Federal Rule of Criminal Procedure 12(b), the court looks at whether the indictment itself "contains a facially sufficient allegation of materiality," and does not consider sufficiency of the evidence. *United States v. Ferro*, 252 F.3d 964, 968 (8th Cir. 2001); *see also United States v. Nelson*, 165 F.3d 1180, 1182 (8th Cir. 1999) ("It has long been settled that an indictment is not open to challenge on the ground that there was inadequate or insufficient evidence before the grand jury."). In other words, the court accepts the allegations in the indictment as true. *See United States v. Augustine Medical, Inc.*, 2004 WL 256772 at *2 (D. Minn. Feb. 10, 2004) ("In reviewing a 12(b) motion to dismiss the indictment, the Court does not entertain an evidentiary inquiry, but rather accepts the allegations of the Indictment as true.") (citing *Ferro*, 252 F.3d at 968). Federal Rule of Criminal Procedure 7(c) provides that an indictment "must be a plain, concise, and definite written statement of the essential facts constituting the offense charged[.]" "As a general rule an indictment is sufficient if it 'first, contains the elements of the charged offense and fairly informs a defendant of the charge against which he must defend[.]'" *United States v. Just*, 74 F.3d 902, 903 (8th Cir. 1996) (quoting *Hamling v. United States*, 418 U.S. 87, 117 (1974)). Additionally, an indictment must contain "all of the essential elements of the offense charged[.]" *United States v. Sewell*, 513 F.3d 820, 821 (8th Cir. 2008) (quotation omitted).

    **i. Counts Two and Three**

5

Section 875(c) of Title 18 of the United States Code provides: "Whoever transmits in interstate or foreign commerce any communication containing any threat to kidnap any person or any threat to injure the person of another, shall be fined under this title or imprisoned not more than five years, or both." Additionally, 18 U.S.C. § 2 states: "(a) Whoever commits an offense against the United States or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal. (b) Whoever willfully causes an act to be done which if directly performed by him or another would be an offense against the United States, is punishable as a principal." In this case, the Indictment sufficiently outlines the elements of the offenses charged. First, the allegations provide that Defendant transmitted a communication in interstate and foreign commerce. Second, the Indictment provides that Defendant intended the communication to threaten and knew that it would be viewed as a threat. Additionally, the Indictment alleges that Defendant's communication contained a threat to injure another person, describing the contents of the communication. Thus, on its face, the Indictment outlines the essential elements of the offenses charged and informs the Defendant of the charges she must defend. *See United States v. Just*, 74 F.3d at 903.

However, as noted, Defendant argues that Counts Two and Three of the Superseding Indictment should be dismissed because her alleged communications do not constitute "true threats" as a matter of law. The First Amendment protects freedom of speech, meaning "that government has no power to restrict expression because of its message, its ideas, its subject matter, or its contents." *United States v. Alvarez*, 132 S. Ct. 2537, 2543 (2012) (quotation omitted). However, "[t]here are certain well-defined and narrowly limited classes of speech, the prevention and punishment of which have never been thought to raise any Constitutional problem." *Chaplinsky v. State of New Hampshire*, 315 U.S. 568, 571-72 (1942). "True threats"

6

Case 6:16-cr-03024-MDH   Document 101   Filed 02/23/17   Page 6 of 20

are among the "discrete categories of content-based restrictions on speech" permitted under the First Amendment. *United States v. Williams*, 690 F.3d 1056, 1061 (8th Cir. 2012). In determining whether statements constitute a true threat, courts look at the statements from the point of view of the recipient and analyze the context in which they were spoken; the subjective intent of the speaker does not come into this First Amendment analysis. *See id.* at 1061-62; *see also Virginia v. Black*, 538 U.S. 343, 359 (2003) ("'True threats' encompass those statements where the speaker means to communicate a serious expression of an intent to commit an act of unlawful violence to a particular individual or group of individuals[.]"); *United States v. Mabie*, 663 F.3d 322, 333 (8th Cir. 2011) (stating that the objective test for determining whether a communication is a true threat does not consider the subjective intent of the speaker).

The Court first notes that the question of whether the allegations alleged constitute a true threat is a question reserved for the jury and thus would seem premature at this stage in the litigation. *See*, *e.g.*, *United States v. Abdulkadir*, 2016 WL 659711 at *3 (D. Minn. Feb. 18, 2016). Nonetheless, the Court concludes that the Indictment complies with First Amendment protections. It provides specific details regarding the charges, including: statements allegedly made by Defendant with the phrases "wanted to kill" and "to eventually hunt him down & kill him" with the names, employee information, address, and phone number of certain individuals working at the FBI; and allegations that Defendant made these statements "with the intent to threaten, and with knowledge that the communication would be viewed as a threat." (*See* Doc. 73.) The Indictment further provides allegations that Defendant maintained a network of Twitter accounts to transmit threats and solicitations of violence that Defendant believed to be from ISIL to persons that were interested in such information, and alleged the two charged communications were part of this effort. (*Id.*) Given this information, the Indictment contains sufficient context

7

to demonstrate the threatening nature of the communications charged. *See Mabie*, 663 F.3d at 333 ("The government need not prove that [Defendant] had a subjective intent to intimidate or threaten in order to establish that his communications constituted true threats. Rather, the government need only prove that a reasonable person would have found that [Defendant]'s communications conveyed an intent to cause harm or injury."). Defendant has been informed of the alleged conduct that gave rise to the charges against her in Counts Two and Three. Furthermore, because the Indictment sufficiently alleges a violation of § 875(c), it also sufficiently alleges that Defendant committed a violation of 18 U.S.C. § 2.

Defendant also takes issue with the fact that she allegedly "retweeted" the statements; that is, Defendant did not type the words herself, but rather re-posted the words of another person verbatim. Because they were not her words, Defendant contends that, as a matter of law, it cannot be alleged that she made threats. Therefore, she believes Counts Two and Three must be dismissed. This Court, however, does not find this argument persuasive. First, some of the information asserted by Defendant regarding the way in which she allegedly made these communications is not within the four corners of the Indictment. Specifically, whether the communications were retweets of another user's post or something Defendant copied but actually typed on her own account is unclear. Moreover, some information used to support both Defendant's and the Government's arguments regarding Twitter and other facts in this case is not within the four corners of the Indictment. (*See*, *e.g.*, Docs. 71, 83, 87, and 97.) Second, even assuming this was a retweet (as asserted by Defendant), there is a general understanding that "[b]y clicking 'retweet,' the user intends to convey the message that she agrees with the 'tweet,' and viewers will understand it that way." Bethany C. Stein, *A Bland Interpretation: Why a Facebook "Like" Should Be Protected First Amendment Speech*, 44 Seton Hall L. Rev. 1255,

8

1277 (2014) (discussing the difference between a Facebook "like" and a "retweet" on Twitter). Additionally, "[m]any forms of speech on social media involve a user re-posting actual words that other users have already typed. Because actual words will appear when a social media user re-posts another user's words, a court should find that this is substantive speech [that may be] protected under the First Amendment." *Id.* at 1282. Given this information, the Court would conclude that the statements should be analyzed as if they were Defendant's own words for the purposes of the Motion to Dismiss. However, as noted, this information falls outside the four corners of the Indictment, and the allegations in Counts Two and Three are sufficient as stated.

With regards to Defendant's second argument, she asserts that the Indictment must be dismissed because it does not allege that Defendant subjectively intended to convey a present or future threat to injure another person, as required by *Elonis v. United States*, 135 S. Ct. 2001 (2015). This argument, however, is premature. In *Elonis*, the jury instructions, not the charge in the indictment, were at issue. *Id.* at 2007. Specifically, the jury was instructed that the government only needed to prove that a reasonable person would regard the defendant's communications as a threat. *Id.* The Supreme Court concluded that this instruction was an error, stating: "[f]ederal criminal liability generally does not turn solely on the results of an act without considering the defendant's mental state." *Id.* at 2012. Rather, a "violation of this criminal statute requires proof of a mental state that separates wrongful from innocent conduct, a requirement that applies 'to the fact that the communication contains a threat.'" *United States v. Wynn*, 827 F.3d 778, 782 (8th Cir. 2016) (*quoting Elonis*, 135 S. Ct. at 2011). The Supreme Court then stated that the *mens rea* requirement under § 875(c) is met if "the defendant transmits a communication for the purpose of issuing a threat, or with knowledge that the communication will be viewed as a threat." *Id.* at 2012. Because the jury instructions in *Elonis* did not include

9

the *mens rea* element for § 875(c), the Supreme Court concluded that the defendant's conviction could not stand.[3] *Id.* at 2012-13.

As noted, the Indictment clearly alleges that Defendant made these statements "with the intent to threaten, and with knowledge that the communication would be viewed as a threat." (Doc. 73.) In doing so, it sufficiently alleges the *mens rea* element of the offense charged under § 875(c) and required by *Elonis*. Whether Defendant actually made the statements with the intention or knowledge alleged in the Indictment is a question that a jury should decide, not this Court at this stage in the litigation. Thus, on its face, the Indictment is sufficient and Defendant's second argument fails.

Defendant's third and fourth arguments are that 18 U.S.C. § 875(c) is unconstitutionally overbroad and vague. Specifically, Defendant contends that the statute is overbroad on its face because it implicates protected expression. Further, she asserts that the statute is vague because it fails to give fair notice of the conduct it punishes. Both arguments fail. "A law may be invalidated as overbroad if a substantial number of its applications are unconstitutional, judged in relation to the statute's plainly legitimate sweep." *United States v. Williams*, 690 F.3d 1056, 1061 (8th Cir. 2012) (quotation and internal marks omitted). In determining whether a statute is overbroad, courts must look to the statute itself and decide whether it, "as construed, criminalizes a substantial amount of protected expressive activity." *Id.* (quotation and internal marks omitted). Courts have ruled that, when a criminal statute first requires the government of proving a person communicated a "true threat," it limits the application of the statute to exclude "political hyperbole" as well as some "vehement, caustic, and sometimes unpleasantly sharp attacks on government and public officials." *Watts v. United States*, 394 U.S. 705, 707-08 (1969) (quotations omitted). In circumstances where the statute is limited in such a way, it is not

---

[3] Because the conviction was overturned on these grounds, the Court did not consider any First Amendment issues.

overbroad. *Id.*; *see also Broadrick v. Oklahoma*, 413 U.S. 601, 613 (1973) ("Facial overbreadth has not been invoked when a limiting construction has been or could be placed on the challenged statute.") (citations omitted).

It is undisputed that in order to show a violation of 18 U.S.C. § 875(c) the Government must show that Defendant communicated a true threat. As such, the statute provides a limitation on the expression that can be implicated and, thus, the Court does not find Defendant's contention regarding the possibility of punishing protected speech persuasive. *See Watts*, 394 U.S. at 707-08; *Broadrick*, 413 U.S. at 613. Defendant also takes issue with the fact that the *mens rea* element has not been clearly defined as required by *Elonis*. However, the Eighth Circuit has ruled that a statute very similar to § 875(c) regarding communication of threats via mail, 18 U.S.C. § 876(c),[4] was not overbroad when construing it as a general intent crime. *Mabie*, 663 F.3d at 332-33. In that case, the court acknowledged the use of an objective test for determining whether a communication amounted to a true threat and thus did not require the government to show a specific intent to threaten in order to show a violation of § 876(c). *Id.* at 333. It therefore concluded that the statute was not overbroad. *Id.* The *Elonis* decision later stated that specific intent is required to show a violation of § 875(c). *Elonis*, 135 S. Ct. 2001. Given that the Eighth Circuit rejected the overbreadth argument for a statute very similar to § 875(c) when only general intent was required, it does not stand to reason that § 875(c) is

---

[4] Specifically, 18 U.S.C. § 876(c) provides:

> Whoever knowingly so deposits or causes to be delivered as aforesaid, any communication with or without a name or designating mark subscribed thereto, addressed to any other person and containing any threat to kidnap any person or any threat to injure the person of the addressee or of another, shall be fined under this title or imprisoned not more than five years, or both. If such a communication is addressed to a United States judge, a Federal law enforcement officer, or an official who is covered by section 1114, the individual shall be fined under this title, imprisoned not more than 10 years, or both.

11

overbroad now when the Government must show specific intent. Therefore, Defendant's argument regarding overbreadth fails.

With regards to vagueness, Defendant makes two main arguments: (1) relying on the opinion of Justice Alito in *Elonis*, concurring in part and dissenting in part, she contends that the Supreme Court "acknowledged" vagueness in § 875(c) because the majority opinion failed to specify the *mens rea* required for a conviction under the statute; and (2) she contends that the statute is vague because there is no definition of "threats" in § 875(c), but only guidance from the courts. The Court is not persuaded by either argument. The void for vagueness doctrine "protects persons by providing 'fair notice' of a statute's applicability by preventing 'arbitrary and discriminatory prosecutions' of a statute's enforcement." *Mabie*, 663 F.3d at 333 (internal quotation omitted). "Void for vagueness simply means that criminal responsibility should not attach where one could not reasonably understand that his contemplated conduct is proscribed." *United States v. Washam*, 312 F.3d 926, 929 (8th Cir. 2002) (quotation omitted).

Despite Defendant's contention, the *Elonis* majority did provide guidance regarding the *mens rea*: "Our holding makes clear that negligence is not sufficient to support a conviction under Section 875(c), contrary to the view of nine Courts of Appeals. . . . There was and is no circuit conflict over the question Justice Alito and Justice Thomas would have us decide—whether recklessness suffices for liability under Section 875(c). No Court of Appeals has even addressed that question." *Elonis*, 135 S. Ct. at 2013. At no point in the opinion does the Supreme Court indicate that the statute is vague. Additionally, other courts have concluded that § 875(c) is not impermissibly vague because "[a]n ordinary citizen can understand what is meant by the terms 'threat to kidnap' and 'threat to injure,' and we are persuaded that the statute provides sufficient standards to allow enforcement in a non-arbitrary manner." *United States v.*

12

*Sutcliffe*, 505 F.3d 944, 953-54 (9th Cir. 2007). Defendant's argument regarding the lack of a definition of "threats" is also unpersuasive because the construction of "threats" in § 875(c) by courts as "true threats" makes the statute not vague. *See id*. at 953 ("the narrowing construction provided by the relevant cases actually alleviates possible void-for-vagueness concerns.").

Defendant further contends in her reply brief, (Doc. 87), that § 875(c) is unconstitutional as applied in this case. This argument also fails. Section 875(c) prohibits threats of violence, specifically threat to kidnap a person or injure a person. It therefore criminalizes speech that is not protected under the First Amendment, that is true threats. *See Black*, 538 U.S. at 359 ("'True threats' encompass those statements where the speaker means to communicate a serious expression of an intent to commit an act of unlawful violence to a particular individual or group of individuals," and citing several cases to regarding the true threat exception to the First Amendment). If the jury is properly instructed and finds that Defendant's statements violated § 875(c), her conviction would be constitutional.

### ii. Count One

With regards to Count One of the Superseding Indictment, which charges the Defendant with conspiracy to solicit a crime of violence in violation of 18 U.S.C. § 371, Defendant's reply contends it insufficiently states the offense as a matter of law and should be dismissed. Section 371 provides: "If two or more persons conspire either to commit any offense against the United States, or to defraud the United States, or any agency thereof in any manner or for any purpose, and one or more of such persons do any act to effect the object of the conspiracy, each shall be fined under this title or imprisoned not more than five years, or both." In order to show a person violated § 371, the prosecution must show that: "(1) the defendants agreed with another, (2) to commit crimes against the United States or violate the laws of the United States, and (3) at least

one overt act was committed in furtherance of the agreement." *United States v. Hayes*, 574 F.3d 460, 472 (8th Cir. 2009) (citation omitted).

Here, Count One of the Indictment alleges that Defendant "knowingly conspired and agreed with one or more persons to commit an offense against the United States, that is: to commit the crime of solicitation to commit a crime of violence in violation of Title 18, United States Code, Section 373." (Doc. 73.) Count One goes on to allege two distinct and overt acts. (*See id.*) These allegations provide the elements for a violation of § 371, and inform Defendant of the charges she must defend against. *United States v. Just*, 74 F.3d at 903 ("an indictment is sufficient if it 'first, contains the elements of the charged offense and fairly informs a defendant of the charge against which he must defend[.]'") (internal quotation omitted). As such, the indictment is sufficient on its face as to the alleged violation of § 371. Therefore, Defendant's argument regarding Count One fails. Based on the foregoing discussion, it is recommended that Defendant's Motion to Dismiss, (Doc. 71), be denied.

### b. Motion to Dismiss the Superseding Indictment for Vindictive Prosecution

In her second Motion, Defendant contends that the Government's actions show that the Superseding Indictment was sought in retaliation for exercising her constitutional and statutory rights. (*See* Doc. 78.) She specifically asserts "[a]t every step in this case, the government has attempted, and at times been successful, in frustrating Ms. Yassin's right to prepare a defense." (*Id.*) Defendant contends that the following actions are relevant to her second Motion. As noted on February 23, 2016, a grand jury in the Western District of Missouri returned a one-count indictment charging Defendant with violations of 18 U.S.C. §§ 875(c) and 2. (Doc. 18.) On February 16, 2016, the Federal Public Defender's Office for the Western District of Missouri was appointed to the above referenced case. (Doc. 7.) On February 19, 2016, the Government

14

filed a Motion for Detention of Defendant, (Doc. 13), which Defendant opposed, (Doc. 16), and the Court granted, (Doc. 25). On March 7, 2016, the Government filed a Motion for a pretrial conference pursuant to the Classified Information Procedures Act ("CIPA"), seeking to inform the Court and Defendant about the classified materials relevant to discovery in this case. (Doc. 28.) On March 18, 2016, Defendant filed a Motion to Revoke or Amend the Magistrate's Order Detaining Defendant. (Doc. 30.)

On March 23, 2016, the Magistrate Court issued a Protective Order regarding discovery for this case, (Doc. 31), which it then stayed, (Doc. 32). That same day, Defendant filed a Motion to Rescind and Objection to Protective Order. (Doc. 33.) On March 24, 2016, Defendant filed a Motion to Compel Discovery, arguing that the Government had failed to abide by the Court's order regarding discovery. (Doc. 34.) The undersigned held a hearing on the Motion to Compel on April 5, 2016. (*See* Docs. 41 and 42.) On April 21, 2016, the Magistrate Court issued a Protective Order that vacated the previously entered Protective Order, (Doc. 31), granted in part Defendant's Motion to Rescind, (Doc. 33), and denied as moot Defendant's Motion to Compel Discovery, (Doc. 34). (Doc. 45.)

On April 14, 2016, the Government filed a Motion to Continue Defendant's trial setting, (Doc. 46), which Defendant objected to on the following day, (Docs. 47 and 48). On April 21, 2016, the Magistrate Court granted the Government's Motion to Continue the trial setting, over Defendant's objections. (Doc. 49). The Court concluded that because the case was so unusual and complex due to the nature of the prosecution and existence of novel facts and legal questions; therefore, it was unreasonable to expect adequate preparation for pretrial proceedings or trial within the time restraints set by the Speedy Trial Act. (*Id.*) It thus concluded that the interest of the public outweighed Defendant's right to a speedy trial. (*Id.*)

15

Case 6:16-cr-03024-MDH   Document 101   Filed 02/23/17   Page 15 of 20

On April 29, 2016, the District Court held a hearing on Defendant's Motion to Revoke or Amend the Magistrate's Order Detaining Defendant. (*See* Docs. 53 and 54.) On this same date, a CIPA meeting was held in chambers in which the Government informed the District Court that a determination regarding whether any discovery not yet given to Defendant is, or is not, classified, would be made by July 11, 2016.[5] At that time, the trial setting was still September 2016. On May 20, 2016, the District Court denied Defendant's Motion to Revoke or Amend the Magistrate's Order Detaining Defendant. (Doc. 61.) On May 20, 2016, Defendant filed a notice of appeal, making an interlocutory appeal regarding the District Court's adopting the order of detention. (Doc. 62). The Eighth Circuit denied Defendant's Motion, (*See* Doc. 65), and issued its mandate on July 14, 2016. (Doc. 72.)

On July 6, 2016, the Government filed a Motion for Extension to File a Pleading Pursuant to CIPA seeking to extend the discovery deadline of July 11 to July 25, 2016. (Doc. 66.) On July 7, 2016, Defendant informed the Court that she had no position regarding the Government's motion for an extension of time. (Doc. 67.) As previously indicated, on July 11, 2016, Defendant filed a Motion to Dismiss the Indictment, (Doc. 71), which is discussed above. On July 19, 2016, the grand jury returned a Superseding Indictment, (Doc. 73), adding a count of conspiracy to solicit others to commit a crime, and another count of making interstate threats. On July 25, 2016, the Government filed a Motion for Second Extension to File regarding CIPA discovery. (Doc. 75). On July 26, 2016, the Magistrate Court granted the Government's motion and enlarged the time to and including August 1, 2016, in which in which the Government can file a pleading pursuant to § 4 of CIPA. (Doc. 76).

On August 1, 2016, the Government field a Notice stating that it had provided an *ex parte* pleading that sought the entry of a protective order pursuant to CIPA. (Doc. 81.) On

---

[5] Though there is no record on the docket regarding this meeting, it is undisputed that this meeting occurred.

16

September 14, 2016, the District Court entered a Protective Order pursuant to CIPA after an *ex parte* and *in camera* review of the material provided by the Government. (Doc. 90.) Specifically, the District Court granted the Government's request to deny discovery of certain classified materials. (*Id.*) On September 21, 2016, Defendant filed a Motion to Rescind or Reconsider the Protective Order. (Doc. 91.) Defendant argued that the Protective Order did not provide some measure of due process to her, and asked the District Court to at least provide her with a summary of the information that she would be denied. (*Id.*) On October 24, 2016, the District Court denied Defendant's Motion, (Doc. 91), stating:

> . . . the Court carefully reviewed the material submitted in light of the prevailing law and granted the government's motion in its entirety. The Court conducted an in camera and ex parte review of the government's submission and found that the government's motion for protective order was properly filed *in camera* and *ex parte* for this Court's review pursuant to CIPA § 4 and Rule 16(d)(1).

(*Id.*)

"Although the government may take action to punish a defendant for committing a crime, punishing a defendant for exercising his valid legal rights is impermissible prosecutorial vindictiveness." *United States v. Stroud*, 673 F.3d 854, 859 (8th Cir. 2012) (quotation omitted). "A prosecution designed solely to punish a defendant for exercising a valid legal right violates due process." *United States v. Leathers*, 354 F.3d 955, 961 (8th Cir. 2004) (citations omitted). The defendant has the "burden to show that the prosecution was brought in order to punish the defendant for the exercise of a legal right." *Id.* (citations omitted). This burden, however, is a heavy one, as courts "are mindful of the broad discretion given to prosecutors in carrying out their duty to enforce criminal statutes." *Id.* (citations omitted). A defendant may show prosecutorial vindictiveness in two ways. First, the defendant may present "objective evidence of the prosecutor's vindictive or improper motive in increasing the number or severity of

17

charges." *United States v. Williams*, 793 F.3d 957, 963 (8th Cir. 2015) (quotation omitted). When there is no such evidence, "a defendant may, in *rare* instances, rely upon a presumption of vindictiveness, if [she] provides sufficient evidence to show a reasonable likelihood of vindictiveness exists." *Id.* (quotation omitted, emphasis in original). In assessing whether a presumption may be inferred, courts look to "the prosecutor's actions in the context of the entire proceedings." *Id.* (quotation omitted).

Given the evidence in this case, the Court is not persuaded that Defendant has met her burden. First, there is no objective evidence of vindictive prosecution. Defendant essentially asserts that the Government filed additional charges against her because she appealed the order regarding detention; challenged the orders regarding discovery and sought access to materials the Court has now concluded the Government need not make available to Defendant; and filed a Motion to Dismiss the Indictment. However, she primarily cites to the discovery issues in this case to support her arguments. The acts the Government has taken regarding discovery and superseding to charge Defendant with two additional counts are not objective evidence of vindictiveness. *See United States v. Campbell*, 410 F.3d 456, 461-62 (8th Cir. 2005) (evidence that the government opposed defendant's motion for new trial and decided to indict defendant on an additional count after a new trial was granted was not objective evidence of vindictiveness). Defendant also appears to concede that there is no objective evidence that the Government attorneys acted with vindictiveness or improper motive in increasing her charges. (*See* Doc. 78.)

Further, the circumstances in this case do not lend themselves to an inference of vindictiveness. Defendant primarily takes issue with her struggles in obtaining discovery. This case, as all parties are painfully aware, involves classified information that the Government believes is sensitive and should be protected. The Court has reviewed some of that information

18

and agrees that its protection is appropriate, as evidenced by the Protective Orders entered. (*See* Docs. 45, 90, and 99.)  Moreover, these Orders are not meant to preclude Defendant from accessing this information for the purposes of discovery; rather, they seek to prohibit and restrict its dissemination to persons who are not counsel to Defendant.  The difficulties that Defendant has encountered in accessing discovery materials appeared to be because the Government wanted to ensure that information was protected prior to exchanging certain discovery, as opposed to vindictiveness.

While the Government did file a Superseding Indictment after Defendant filed her first Motion to Dismiss, filed her interlocutory appeal, and made several challenges regarding discovery, the Court is loath to make this case one of the rare instances when vindictiveness could be inferred at this stage in the litigation, particularly when Defendant did not prevail on appeal or in rescinding discovery orders.  *See United States v. Goodwin*, 457 U.S. 368, 382-84 (1982) (stating that "a prosecutor should remain free before trial to exercise the broad discretion entrusted to him to determine the extent of the societal interest in prosecution" and "a change in the charging decision made after an initial trial is completed is much more likely to be improperly motivated than is a pretrial decision."); *United States v. Pruett*, 501 F.3d 976, 983-84 (8th Cir. 2007), *overruled on other grounds*, *Watson v. United States*, 552 U.S. 74 (2007) (noting the unlikelihood that a presumption of vindictiveness would be warranted at the pretrial stage).  Moreover, courts have permitted subsequent federal prosecution after conviction for the same conduct in state court, as well as after a defendant successfully obtained suppression of the evidence in state court resulting in dismissal of state charges.  *See United States v. Beede*, 974 F.2d 948, 954 (8th Cir. 1992) (citing cases with these holdings and others that resulted in subsequent federal prosecutions).  If those courts did not infer a presumption of vindictiveness,

the Court does not believe that the evidence here warrants an inference of vindictiveness. As such, Defendant has failed to make a prima facie showing that the Government was vindictive in filing a Superseding Indictment. "[I]n the absence of clear evidence to the contrary, courts presume that [prosecutors] have properly discharged their official duties[.]" *United States v. Chappell*, 779 F.3d 872, 880 (8th Cir. 2015) (quotation omitted). Therefore, Defendant's second Motion to Dismiss should be denied.

### III.    Recommendation

For the foregoing reasons, it is **RECOMMENDED** that Defendant's Motion to Dismiss the Indictment, (Doc. 71), and Motion to Dismiss the Superseding Indictment for Vindictive Prosecution, (Doc. 78), be **DENIED**.

Further, the Government's outstanding Motion for an Extension of Time, (Doc. 66), is **DENIED as moot**.

/s/ *David P. Rush*
DAVID P. RUSH
UNITED STATES MAGISTRATE JUDGE

DATE: February 23, 2017