**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION**

| | |
|---|---|
| **UNITED STATES OF AMERICA,**  Plaintiff,  v.  **SAFYA ROE YASSIN,**  Defendant. | Case No. 16-03024-01-CR-S-MDH |

## SENTENCING MEMORANDUM

The United States of America, through undersigned counsel, respectfully submits this sentencing memorandum in support of its recommendation that this Court sentence defendant Safya Roe Yassin to a Guidelines sentence of 120 months' imprisonment and order her to pay $20,034.91 in restitution.

From May 2015 until her arrest in February 2016, the defendant engaged in a concerted and prolonged effort to support the online activities of the Islamic State of Iraq and al-Sham (ISIS). ISIS is a foreign terrorist organization that has encouraged and taken credit for attacks against civilians throughout the world, including in the United States. By maintaining numerous social media accounts and posting violent messages to them, the defendant was steadfast and outspoken in her support for ISIS and its murderous mission. The defendant communicated directly with at least one person she believed to be an ISIS operative overseas, and through her guilty pleas, admitted that on two occasions she helped ISIS threaten and terrorize the four victims in this case, whom ISIS targeted for no reason other than their honorable service to the United States.

ISIS is not a closely held, hierarchical organization. Instead, it depends on persons such as the defendant to spread its hateful ideology, recruit fighters, and conduct attacks on civilians. The defendant acted as a proxy within the United States for this terrorist organization. While a Guidelines sentence in this case is also the statutory maximum, only a sentence of that magnitude will be sufficient but not greater than necessary to further the purposes of 18 U.S.C. § 3553(a) and deter the defendant and others who may be tempted by ISIS's clarion call.

**BACKGROUND**

On February 23, 2016, a grand jury in the Western District of Missouri returned a one-count indictment charging defendant Safya Roe Yassin with transmitting interstate threatening communications in violation of 18 U.S.C. §§ 875(c) and 2. (Doc. 18.) That indictment alleged that on August 24, 2015, the defendant transmitted a threatening communication that provided the names and personal identifying information (PII) of two FBI employees, identified at Victim 1 and Victim 2, along with "Wanted to Kill."

The following July, a grand jury returned a three-count superseding indictment charging the defendant with one count of conspiracy to solicit a crime of violence in violation of 18 U.S.C. § 371 and two counts of transmitting threatening communications in interstate commerce in violation of 18 U.S.C.§ 875(c). (Doc. 73.) The superseding indictment included the threat count from the original indictment as Count Two, and added an October 8, 2015, threatening communication that listed the PII of two former United States service members, Victim 3 and Victim 4, as Count Three.

On February 28, 2018, the defendant pled guilty to Counts Two and Three of the superseding indictment pursuant to a written plea agreement. (Doc. 119 and 120.) In that plea agreement (Doc. 120), the parties made the following stipulations:

- The applicable Guidelines section for the defendant's offenses of conviction is U.S.S.G. § 2A6.1, which provides for a base offense level of 12 per each offense of conviction (¶ 10.b.);

- Pursuant to U.S.S.G. § 3A1.2(b), there is a 6-level enhancement per offense because the victims were government officers and employees and the offense was motivated by that status (¶ 10.c);

- The Terrorism enhancement of U.S.S.G. § 3A1.4 applies to the defendant's offenses of conviction, meaning that her base offense level is no less than 32, and her criminal history category is VI (¶¶ 10.d. and 10.f.); and

- Subject to the conditions detailed in her plea agreement, the defendant is entitled to a 3-level reduction for acceptance of responsibility pursuant to § 3E1.1(b) due to her timely acceptance of responsibility (¶ 10.e.).

The final PSR recommends each of enhancements stipulated to in the plea agreement. (PSR ¶¶ 39, 41, 42, 45, 46, 48, 49, 52, 58, and 59.) In addition, the final PSR recommends a 2-level enhancement under the grouping rules U.S.S.G. §§ 3D1.1 to 3D1.4 to account for each the two counts of conviction having different victims. (PSR ¶¶ 53-56.) As a result, the PSR calculates the defendant's total offense level as 31 and her criminal history category as VI, which would normally result in Guidelines range of 188-235 months' imprisonment. (PSR ¶ 106.) Because the two counts of conviction both have maximum sentences of 5 years, however, the Guidelines recommend 120 months, or the statutory maximum sentence available for those two counts. (PSR ¶ 105-106 (citing U.S.S.G. § 5G1.2(d).)

**OFFENSE CONDUCT**

As detailed in ¶ 3 of the defendant's proposed plea agreement, beginning in May 2015, the defendant created a series of Twitter accounts under the pseudonym "Muslimah" that she routinely used to tweet messages in support of ISIS and to re-tweet messages that she knew were authored by ISIS operatives residing overseas. Those overseas operatives included "Individual A," who the

defendant knowingly aided in transmitting threatening communications against current and former officers and employees of the United States.

From May 2015 through October 2015, the defendant and Individual A communicated over Twitter about the defendant's support of ISIS on that social-media platform.  Because Twitter quickly closed accounts with violent, pro-ISIS content, the defendant coordinated with Individual A to ensure that the new accounts of Individual A and others were sufficiently well known so that threatening communications from those accounts reached as wide as possible an audience before Twitter removed them.  The defendant knew that Individual A intended to threaten violence against United States government employees to further ISIS's efforts to terrorize and threaten Americans.  In assisting Individual A, the defendant fully intended to promote that person's work for ISIS.  At one point, Individual A thanked the defendant "for all of your support for the Islamic State."

The defendant's use of Twitter to further ISIS's violent mission includes the conduct underlying the two counts she pled guilty to in this case.  The defendant was well aware in August 2015 that Individual A and other ISIS operatives were releasing the PII of United States government employees along with threats and calls for violence.  The defendant actively re-posted those "kill lists" to help widely publicize ISIS's calls for violence.  Those posts included the August 25, 2015, re-tweet charged in Count 2.

Those posts also included the defendant's October 8, 2015, re-tweet of a message from Individual A containing the PII of two former United States service members.  The defendant's re-tweet linked to a document that had the PII of one of the service members, Victim 3, along with photos of his family.  The document stated "[o]nce again I leave these details online to cause havoc in his life & for my brothers and Al-Qaeda in the U.S. to eventually hunt him down & kill him."

4

The document also contained the PII of the other service member, Victim 4, who the defendant knew ISIS previously identified at its "number one target."

The defendant's threatening actions persisted up to and through her arrest in February of 2016. After the postings described above, the defendant continued to regularly post pro-ISIS, violent tweets, including several more that included PII of United States employees. The defendant's persistent postings finally ended with her arrest, but her attempts to continue the mission did not. Even though the defendant admitted to an associate in January 2016, that her "posts are directed at men and jihad a lot. . . [t]rying to incite," she denied that intent during her post-arrest interview. And even though the defendant's correspondence with Individual A showed she knew precisely with whom she was dealing, she similarly denied knowing who Individual A was during that interview.

## SENTENCING GUIDELINES

The defendant pled guilty to two counts of transmitting threatening communications in violation of 18 U.S.C. § 875(c). As each count is a five-year felony, the maximum term of imprisonment the defendant can receive is 120 months' imprisonment. As shown below, but for that statutory maximum, the Guidelines would recommend a much longer term because of the extreme aggravating factors present here, including that the defendant committed her crimes with the intent to promote a federal crime of terrorism.

**A.    Because the Terrorism enhancement of U.S.S.G. § 3A1.4 applies in this case, the defendant's recommended Guidelines range is the statutory-maximum of 120 months' imprisonment.**

The Terrorism enhancement of § 3A1.4 controls the application of the Guidelines to this defendant. That enhancement applies to an offense that "is a felony that involved, or was intended to promote, a federal crime of terrorism." U.S.S.G. § 3A1.4(a). In her plea agreement, the defendant agrees and stipulates that the enhancement applies because the two threat counts to

5

which she pled guilty "were intended to promote a federal crime of terrorism, namely the provision of material support or resources to ISIS, a designated foreign terrorist organization, in violation of 18 U.S.C. § 2339B." (Doc. 120 ¶ 10.d.)  The PSR agrees.  (PSR ¶¶ 42, 45, 49, and 54.)

The Terrorism enhancement effects the defendant's Guidelines in two distinct ways: (1), it increases her offense level to 32; and (2) makes her criminal history category VI.  U.S.S.G. § 3A1.4.  As a result, after a 3-level reduction for acceptance of responsibility, the defendant's final offense level cannot be lower than 29.  When combined with a mandatory criminal history category of VI, the defendant's recommended Guidelines range would be at least 151-188 months' imprisonment (and likely more given the multiple counts of conviction, which are discussed below) but for the statutory maximum for a plea to Counts Two and Three being 120 months.  Consequently, the Terrorism enhancement alone ensures that the Guidelines recommend a statutory-maximum sentence in this case.

As outlined in her plea agreement and the PSR, the defendant's conduct falls squarely within the Terrorism enhancement.  Although 18 U.S.C. § 875 is not an enumerated federal crime of terrorism under 18 U.S.C. § 2332b(g)(5)(B), a defendant need not be convicted of a federal crime of terrorism for the enhancement to apply.  *See, e.g.*, *United States v. Mandhai*, 375 F.3d 1243, 1247 (11th Cir. 2004); *United States v. Graham*, 275 F.3d 490, 517 (6th Cir. 2001).  Rather, the crime need only "involve" or be "intended to promote" a federal crime of terrorism, which in this case the defendant stipulates, and the facts readily support, was the material support of ISIS in violation of 18 U.S.C. § 2339B by those who originally posted the threats she reposted.  The defendant admits, and the evidence proves, that she knew she was acting at the direction of and in concert with ISIS operatives to assist them threaten, intimidate, and terrorize U.S. government employees. She knew that those threats were calculated to intimidate, coerce, and retaliate against

the United States, and she actively helped bring about those goals. Under these facts, the Terrorism enhancement of U.S.S.G. § 3A1.4 applies to each count of conviction.

B.  **Prior to the application of the Terrorism enhancement, the defendant's base offense level of 12 should be enhanced 6 levels under U.S.S.G. § 3A1.2 for official victims.**

While it ultimately does not affect the defendant's final offense level due to the Terrorism enhancement, this Court must nonetheless determine the proper application of the enhancement for official victims. *See*, *e.g.*, *United States v. Mashek*, 406 F.3d 1012, 1015 (8th Cir. 2005). Both the parties and the PSR agree that the defendant's base offense level for her offenses is 12 under U.S.S.G. § 2A6.1, and that there should be a 6-level enhancement under § 3A1.2(b) because her offenses involved official victims. (Doc. 120 ¶ 10.c.; PSR ¶¶ 41 and 48.) That 6-level enhancement applies because the parties stipulate, and the evidence proves, that the victims were current or former United States employees, the offense was motivated by that status, and "the applicable Chapter Two guideline is from Chapter Two, Part A." U.S.S.G. § 3A1.2(b).

C.  **There is an enhancement of 2 levels due the defendant pleading guilty to two counts of making threatening communications involving four victims.**

The United States agrees with the PSR that the grouping rules of U.S.S.G. §§ 3D1.1 – 3D1.3 increase the defendant's Guidelines range an additional 2 levels to account for the two counts of conviction. (PSR ¶¶ 53-56.) The commentary to U.S.S.G. § 2A6.1 provides that "[f]or purposes of Chapter Three, Part D (Multiple Counts), multiple counts involving making a threatening or harassing communication to the same victim are grouped together under §3D1.2 (Groups of Closely Related Counts). Multiple counts involving different victims are not to be grouped under §3D1.2." Because the defendant is pleading guilty to two counts that involve different victims, there are two groups of offenses under the grouping rules, which result in a 2-level increase to the defendant's total offense level. *See* U.S.S.G. § 3D1.4. While a 2-level

enhancement applies, this enhancement also does not change the Guidelines recommendation of a statutory-maximum, 120-month sentence.

**D.      This Court should order the defendant to pay $20,034.91 in restitution to the victims in this case.**

The United States further agrees with the PSR that restitution is mandatory in this case. (PSR ¶¶ 118 and 119.)  Pursuant to the Mandatory Victims Restitution Act (MVRA), 18 U.S.C. § 3663A, "the court shall order" restitution when sentencing a defendant for "a crime of violence," which includes any "offense that has an element the. . . threatened use of physical force." 18 U.S.C. §§ 3663A(a)(1) and (c)(1)(A)(i); 18 U.S.C. § 16(a).  As both of the defendant's offenses of conviction involve threats of physical force, the defendant shall be ordered to pay restitution to the two victims that requested reimbursement in this case.  As explained below, the total amount of restitution should be $20,034.91 to reimburse those two victims for the additional security measures they took to ensure the safety of their families after the defendant posted their PII along with instructions to kill them.

"The primary goal of restitution is remedial or compensatory." *United States v. Paroline*, 572 U.S. __, 134 S. Ct. 1710, 1726 (2014).  Restitution also serves another important function – "impress[ing] upon offenders that their conduct produces concrete and devastating harms for real, identifiable victims." *Id*. at 1727.  Courts resolve issues related to restitution by a preponderance of the evidence, and the United States bears the burden of demonstrating "the amount of loss sustained by a victim as a result of the offense." 18 U.S.C. §3364. The "court shall order restitution to each victim in the full amount of each victim's losses as determined by the court and without consideration of the economic circumstances of the defendant."   18 U.S.C. § 3664(f)(1)(A).  For purposes of restitution, a victim is "a person directly and proximately harmed as a result of the commission of an offense for which restitution may be ordered." 18 U.S.C. § 3663A(a)(2).

8

In this case, the defendant owes restitution for the losses each victim suffered to keep their families and property safe after the defendant's crimes. While the Eighth Circuit has not directly addressed the issue, other circuits have held that threat victims may receive restitution for expenses paid to render their property safe, even if the defendant did not actually damage their property. For example, in *United States v. Quillen*, 335 F.3d 219 (3d Cir. 2003), the Third Circuit upheld an award of restitution where the defendant mailed a state parole board a threatening letter that contained a white-powder substance that turned out to be harmless. *Id.* at 219-22. After the defendant pled guilty to mailing a threat in violation of 18 U.S.C. § 876, the district court ordered restitution for hazmat clean-up costs and reimbursement for damaged personal property. *Id.* at 221. The Third Circuit affirmed, noting that the "only practical option was to order Quillen to pay the cost of ensuring that the mail room was in the same condition as just prior to the time it became unusable." *Id.* at 222. *See also United States v. Overholt*, 307 F.3d 1231, 1235-36 (10th Cir. 2002) (affirming award of restitution for clean-up costs, even though losses were solely economic).

The Third Circuit's reasoning in *Quillen* applies with equal force to this case. In this case, the defendant damaged the victims' property; that is, by reposting the threats, she rendered their homes unsafe. All four of these victims reported paying additional costs to make their homes safe. (PSR ¶¶ 31-34.) Two of the victims further submitted declaration of losses for the reasonable remedial measures they undertook to ensure that their homes were secure. (PSR ¶ 35.) The only way to make those victims whole is to award them these costs, which the PSR lists as $7,534.91 for Victim 2 and $12,500 for Victim 3. (PSR ¶¶ 35 and 118.) Those two amounts equal the PSR's recommended restitution amount of $20,034.91.

## SENTENCING RECOMMENDATION

This Court must impose a sentence "sufficient, but not greater than necessary, to comply with the purposes set forth in" 18 U.S.C. § 3553(a). As shown below, a Guidelines-recommended, statutory-maximum sentence of 120 months, along with an order to pay full restitution, is the only sentence available that satisfies that mandate.

**A.   The nature and circumstances of the defendant's long-running efforts to assist ISIS by transmitting threats, warrant a sentence of 120 months' imprisonment.**

The nature and circumstances of these offenses clearly call for a Guidelines sentence. The defendant's conduct aided a significant foreign terrorist organization and undermined American national security. She acted over the course of several months, and her posts were viewed throughout the world. She repeatedly glorified violence and encouraged ISIS supporters to commit terrorist attacks. The defendant sought to strike fear in the hearts of innocent persons, including the victims in this case and their families.

The defendant did not act in a vacuum. Her conduct was part of a larger movement to grow support for ISIS in the United States and abroad. The Court has received and reviewed at least one victim impact statement describing in detail the profound and lasting impact the defendant's conduct has had on that victim. Innocent people who happen to now live at the addresses named in the threats are now also at risk, even if they never served in the military. The defendant's conduct was severe, and her contribution to ISIS's terrorizing mission cannot be understated.

**B.   The history and characteristics of this defendant also demonstrate the reasonableness of a substantial sentence.**

The crimes in this case are not the first time this defendant transmitted threats. In 2001, the defendant was charged with threatening to kill the father of one of her children in San Bernardino County, California. (*See* PSR ¶ 74.) While the threat charges were dropped after her guilty plea to child abduction, the behavior shows that this defendant did not learn from her

punishment in that case. That offense is a particularly relevant part of this defendant's history and characteristics for this Court to consider at sentencing.

In an effort put aside her past threats, the United States anticipates that the defendant will likely ask this Court for leniency based on any number of personal factors – such as being a single mother or being on disability – but none of those personal considerations warrant any variance from a recommended Guidelines sentence. As described in ¶¶ 95-96 of the PSR, this defendant does not suffer from any mental defect that lessoned her judgment or made her unusually susceptible to influence. Rather, she was of a clear mind when she sought out her role as an ISIS operative in the United States. There was no influence over her decision to publicly advance ISIS's objectives on the internet. In fact, she used her disability status to make a full-time job of creating and using social media accounts to commit her crimes. The defendant knowingly and voluntarily took these actions, and this Court should hold her fully accountable.

**C.    A sentence of 120 months will adequately reflect the seriousness of the offense, promote respect or the law, and provide just punishment to this defendant as required by § 3553(a)(2)(A).**

A 120-month sentence will reflect the seriousness of the offense, promote respect for the law, and provide for just punishment. This is a very serious, federal, felony offense. The seriousness of the offense is heightened by the very real peril she put her victims in. At the time the defendant re-posted the PII and threats, ISIS was actively soliciting persons in the United States to use those addresses for violent attacks. The threats to these victims were very real, and the victims' fears of violence against themselves and their families was entirely justified. This defendant played an active and crucial role in assisting ISIS in spurring that fear, and 120 months' imprisonment is the only available sentence that meets the goals of § 3553(a)(2)(A).

**D. A sentence of 120 months would afford adequate deterrence to criminal conduct as required by § 3553(a)(2)(B), while any shorter sentence would not.**

No sentencing factor weighs more heavily in favor of a 120-month sentence than the need to afford adequate deterrence to criminal conduct. With regard to specific deterrence, this defendant is a recidivist with regard to making threats, and she not only refused to cease her conduct after the FBI originally interviewed her in this case, but instead escalate it. With regard to general deterrence, a 120-month sentence provides strong notice to the public that threats against public servants and service members cause egregious harms and will be duly punished.

**E. A sentence of 120 months fully embraces the available statutory sentence and the recommendations of the Sentencing Guidelines as required by §§ 3553(a)(3) and (4).**

Courts have repeatedly emphasized that persons convicted of terrorism offenses should receive lengthy sentences. *See United States v. Ali*, 799 F.3d 1008, 1031 (8th Cir. 2015) ("'[E]ven terrorists with no prior criminal behavior are unique among criminals in the likelihood of recidivism, the difficulty of rehabilitation, and the need for incapacitation.'") (quoting *United States v. Meskini*, 319 F.3d 88, 92 (2d Cir. 2003)). In doing so, Courts have denied challenges to the Terrorism enhancement increasing both the defendant's offense level and criminal history category. *See Ali*, 499 F.3d at 1031; *Meskini*, 319 F.3d at 92 ("Congress and the Sentencing Commission had a rational basis for concluding that an act of terrorism represents a particularly grave threat because of the dangerousness of the crime and the difficulty of deterring and rehabilitating the criminal, and thus that terrorists and their supporters should be incapacitated for a longer period of time."). A sentence of 120 months is the only available sentence that properly accounts for the will of Congress and the Sentencing Commission in this case.

**F.     A sentence of 120 months would avoid unwarranted sentence disparities among defendants guilty of similar conduct as required by § 3553(a)(6).**

A sentence of 120 months for this defendant would avoid unwarranted sentencing disparities as it is in line with, if not a bit below, sentences imposed on "defendants with similar records who have been found guilty of similar criminal conduct." 18 USC §3553(a). The defendants most similarly situated to the defendant that have been sentenced to date are Terrence McNeil, Ali Amin, and Jalil Ibn Ameer Aziz. All three cases involve defendants that, like this defendant, used the internet in support of ISIS. These three cases further show that the defendant should receive a Guidelines-recommended, statutory-maximum sentence.

McNeil pled guilty to multiple counts of solicitation to commit murder of officers and employees of the United States in violation of 18 U.S.C. § 373 and making threatening interstate communications in violation of 18 U.S.C. § 875(c). *See United States v. McNeil*, 15-cr-0446-DAP, ECF No. 90 (N.D. Ohio April 18, 2017). From May 2014 to October 2015, McNeil maintained social media accounts on several websites, including Facebook, Twitter, and Tumblr. *McNeil*, ECF No. 96 at 1. McNeil's conduct included reposting a "kill list" that this defendant posted but was not charged for, and reposting a different threat against one of the victims in this case. *McNeil*, ECF No. 96 at 3-4. McNeil was between 21 and 22 years-old when he committed these offenses, and like this defendant, he did not attempt to travel overseas or conduct an attack in the United States. Notwithstanding, the district court sentenced him to 20 years' imprisonment and a lifetime of supervised release. *McNeil*, ECF No. 98.

Amin pled guilty to a single-count criminal information that charged him with providing material support to ISIS in violation of 18 U.S.C. § 2339B. *See United States v. Amin*, 1-15-cr-0164-CMH, ECF No. 6 (E.D. Va. June 11, 2015). Amin used the Twitter account @AmreekiWitness "to conduct Twitter-based conversations regarding ways to develop financial

support for ISIL . . . and ways to establish a secure donation system or fund for ISIL." *Amin*, ECF No. 7 ¶ 5. Amin also operated a web page and blog that proselytized for ISIS and advised ISIS supporters on operational security. *Amin*, ECF No. 7 ¶¶ 7-8. In addition, Amin radicalized a local friend and facilitated his travel to ISIS- controlled territory. *Amin*, ECF No. 7 ¶¶ 9-19. The court sentenced Amin to 136 months of imprisonment and a lifetime of supervised release. Although the court departed downward slightly from a Guidelines sentence, Amin, unlike this defendant, cooperated extensively with investigators.

Aziz pled guilty to one count of providing material support to ISIS in violation of 18 U.S.C. § 2339B and one count of transmitting an interstate threat in violation of 18 U.S.C. § 875(c). *United States v. Aziz*, 1-15-cr-00309-CCC, ECF 148 at 1. From June 2014 to December 2015, Aziz used Twitter to send thousands of tweets and direct messages on behalf of ISIS. Aziz, ECF 137 at 1, 6. Like Amin, Aziz attempted to facilitate travel to fight for ISIS, and like McNeil, Aziz reposted one of the ISIS "kill lists." *Aziz*, ECF 137 at 6-7, 39. The court sentenced Aziz to 160 months' imprisonment to be followed by 12 years supervised release. *Aziz*, ECF No. 148 at 2-3.

As these cases demonstrate, a 120-month sentence is the only available sentence for this defendant that would avoid unwarranted disparities from the three extremely similarly situated defendants sentenced to date.

## CONCLUSION

For the reasons stated above, the United States respectfully requests that this Court sentence defendant Safya Roe Yassin to 120 months' imprisonment and order her to pay $20,034.91 in restitution.

                                            Respectfully submitted,

                                            Timothy A. Garrison
                                            United States Attorney

By    */s/ **Brian P. Casey***

                                            Brian P. Casey
                                            Assistant United States Attorney

                                            Charles Evans Whittaker Courthouse
                                            400 East Ninth Street, Room 5510
                                            Kansas City, Missouri 64106
                                            Telephone:  (816) 426-3122

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a copy of the foregoing was electronically filed on June 1, 2018, with the Clerk of Court using the CM-ECF system of the United States District Court for the Western District of Missouri thereby sending notification of the filing to CM-ECF participants in this matter.

*/s/ Brian P. Casey*
Brian P. Casey
Assistant United States Attorney