```
                UNITED STATES DISTRICT COURT
                WESTERN DISTRICT OF MISSOURI
                      SOUTHERN DIVISION


UNITED STATES OF AMERICA,          )
                                   )
             Plaintiff,            )
                                   ) Case No.
        vs.                        ) 16-CR-3024-MDH-1
                                   )
                                   )
SAFYA ROE YASSIN,                  )
                                   )
             Defendant.            )
```

## CHANGE OF PLEA
### BEFORE THE HONORABLE M. DOUGLAS HARPOOL
### WEDNESDAY, FEBRUARY 28, 2018; 1:35 P.M.
### SPRINGFIELD, MISSOURI

APPEARANCES:

| | |
|---|---|
| FOR THE PLAINTIFF: | MR. ABRAM MCGULL, II<br>UNITED STATES ATTORNEY'S OFFICE<br>901 St. Louis, Ste. 500<br>Springfield, MO  65806 |
| FOR THE DEFENDANT: | MR. IAN A. LEWIS<br>FEDERAL PUBLIC DEFENDER'S OFFICE<br>901 St. Louis, Ste. 801<br>Springfield, MO  65806 |
| COURT REPORTER: | MS. JEANNINE RANKIN, RPR, CSR<br>UNITED STATES DISTRICT COURT<br>222 N. Hammons Parkway<br>Springfield, MO  65806 |

    Proceedings recorded by mechanical stenography;
transcript produced by computer.

```
 1                    USA v SAFYA ROE YASSIN
 2                  CASE NO. 16-3024-CR-MDH-1
 3                       CHANGE OF PLEA
 4                      February 28, 2018
 5                      *  *  *  *  *  *
```

6     THE COURT:  We are here in United States versus
7 Safya Roe Yassin.  Who appears on behalf of the United States?
8     MR. MCGULL:  Abe McGull and Brian Casey, along with
9 Special Agent Stacey Lane.
10     THE COURT:  And on behalf of the defendant?
11     MR. LEWIS:  Ian Lewis for the defense, Your Honor.
12     THE COURT:  Would you have your client stand.
13     My name is Doug Harpool.  I'm the federal district
14 judge that has supervision over your case and presiding over
15 your case.
16     Earlier you have entered a plea of not guilty.  I
17 have been advised that you have now negotiated with your
18 attorney's assistance a plea agreement where you change your
19 plea to, I think, some of the allegations against you.  That's
20 common, it's perfectly your right to do so, but there are
21 certain procedural requirements we have to go through in order
22 to allow you to do that and make sure the circumstances are
23 proper.  We are here for me to consider those issues I have to
24 take up and consider and make sure that the circumstances are
25 appropriate.

```
 1                    You understand that's why we're here?
 2               THE DEFENDANT:  Yes.
 3               THE COURT:  In order to make the findings that I
 4     need to make, I need to place you under oath and ask you
 5     certain questions surrounding the plea agreement.  All right?
 6               THE DEFENDANT:  Yes.
 7               THE COURT:  Raise your right hand.
 8               (Defendant duly sworn by Court.)
 9               THE COURT:  I have in front of me a written plea
10     agreement that is typed and this typed plea agreement has on
11     the last page, page 14, a place where your name appears in
12     type and there is a signature above it.  Did you sign that
13     agreement?
14               THE DEFENDANT:  Yes.
15               THE COURT:  And it's dated today, so did you sign it
16     today?
17               THE DEFENDANT:  Yes.
18               THE COURT:  You're able to read and write English,
19     correct?
20               THE DEFENDANT:  Yes.
21               THE COURT:  Did you read the agreement?
22               THE DEFENDANT:  Yes, I have.
23               THE COURT:  Did you discuss the agreement with your
24     lawyer?
25               THE DEFENDANT:  Yes.
```

1  THE COURT: I don't want you to tell me anything
2  your lawyer told you because that's confidential between the
3  two of you but I do want to make sure a few -- do you feel
4  you've had enough time?
5  THE DEFENDANT: Yes.
6  THE COURT: Did you ask him all the questions you
7  had to ask him?
8  THE DEFENDANT: Yes.
9  THE COURT: Did he go through paragraph by paragraph
10 and talk to you about different provisions in the agreement?
11 THE DEFENDANT: Yes.
12 THE COURT: Was he able to answer all of the
13 questions that you raised to him?
14 THE DEFENDANT: Yes.
15 THE COURT: Are you satisfied that you understand
16 what this agreement means?
17 THE DEFENDANT: Yes.
18 THE COURT: Are you satisfied with the services
19 Mr. Lewis has provided you?
20 THE DEFENDANT: Yes.
21 THE COURT: Mr. Lewis, did you have enough discovery
22 from the government that you felt you were in a position to
23 properly advise your client and answer the questions she
24 raised concerning the plea agreement?
25 MR. LEWIS: Yes, Your Honor.

1   THE COURT: Do you feel you've had enough time to
2   discuss the agreement with your client?
3   MR. LEWIS: Yes, Your Honor.
4   THE COURT: All right. There are certain findings I
5   told you I have to make in order to accept this. I do not
6   mean any offense by any of the questions I ask you but they
7   are required for me to make sure. The first one has to do
8   with do you feel you're competent to make this decision with
9   the advice of counsel on your own behalf?
10  THE DEFENDANT: Yes.
11  THE COURT: At any time that you were negotiating
12  this contract -- I mean this plea agreement which is a type of
13  contract or like a contract, were you under the influence of
14  any drug or narcotic?
15  THE DEFENDANT: No.
16  THE COURT: Under the influence of any alcohol?
17  THE DEFENDANT: No.
18  THE COURT: Were you suffering from any mental
19  illness that affected your ability to understand the
20  negotiations?
21  THE DEFENDANT: No.
22  THE COURT: The agreement contains some important
23  decisions in your life because you'll be admitting your guilt
24  to some crimes. That means that you'll be losing the
25  presumption of innocence, so it's important that you came to

this conclusion voluntarily. So let me ask you: Did anybody threaten you or your family with any type of harm or injury in order to force you or try to coerce you into changing your plea to guilty?

THE DEFENDANT: No.

THE COURT: Did anybody make promises to you other than what's in the agreement itself to do something favorable to you or your family or someone you care about in order to entice you or persuade you to accept guilt as described in this agreement?

THE DEFENDANT: No.

THE COURT: Has anybody asked you to -- I'm going to use the phrase take the fall or take the blame for something that someone else did in this agreement?

THE DEFENDANT: No.

THE COURT: Is the decision to enter into this agreement one that in the end you've come to voluntarily?

THE DEFENDANT: Yeah.

THE COURT: Do you believe it's what's in your best legal interest at this time?

THE DEFENDANT: Yeah.

THE COURT: I want to go through a few of the specific provisions of the agreement with you. I'm not going to go through every word because you told me you and your lawyer did that, but I do want to make sure that for purposes

6

1  of our record it's clear what some of the provisions are and I
2  want to start with Paragraph 2.
3          By entering into this agreement, if I approve it,
4  then you will be pleading guilty to Counts 2 and 3 of the
5  superseding indictment.  They charge you with transmitting
6  interstate threatening communications in violation of 18
7  U.S.C. 875(c).  If you enter into this agreement then you are
8  admitting that you knowingly committed those offenses and in
9  fact are guilty of those offenses.  Are you aware of that?
10         THE DEFENDANT:  Yes.
11         THE COURT:  Paragraph 5 of the agreement sets forth
12 the penalties that the U.S. Congress has adopted by law for
13 someone who's committed the crime.  So someone who has --
14 guilty of what you would be admitting in Counts 2 and 3; that
15 is, the crime of transmitting interstate threatening
16 communications, the maximum penalty the Court could impose is
17 not more than five years of imprisonment per count of
18 conviction, a $250,000 fine per count of conviction, three
19 years of supervised release per count of conviction, you can
20 be ordered to make restitution, and also a $100 mandatory
21 special assessment per each count and that's due on the time
22 of your sentencing.
23         Are you understanding that that is the penalty you
24 could face according to the Congress if you are indeed guilty
25 of those two crimes?

7

1    THE DEFENDANT: Yes.

2    THE COURT: Your actual sentence is going to be
3    determined by me, assuming I'm still your sentencing judge,
4    which we would expect. In sentencing you I'll have to give
5    you a sentence which is one of those authorized by the
6    Congress but we'll consider the U.S. Sentencing Guidelines.
7    That's this book here. We'll calculate an offense level and a
8    criminal history category and then based on that we'll
9    determine what your sentence should be. In the end, though,
10   your sentence can be above or below the guideline as long as
11   it's within the authority issued by Congress. You understand
12   that?

13   THE DEFENDANT: Yes.

14   THE COURT: There's lots of factors we'll consider
15   in sentencing but one of them will be the guideline sentence.
16   And I notice that there are agreements in this plea
17   considering the guidelines and it indicates that -- and I'm
18   referring to Paragraph 10, Paragraph D, 10D on page 7. It
19   says, "The parties stipulate and agree that the defendant's
20   offense level is increased to a Level 32."

21   Are you aware that's part of the agreement?

22   THE DEFENDANT: Yes.

23   THE COURT: Then down in Paragraph F of 10, that
24   your criminal history is a six. Are you aware that that's
25   part of this plea agreement?

8

Case 6:16-cr-03024-MDH   Document 135   Filed 06/28/19   Page 8 of 17

1       THE DEFENDANT: Yes.

2       THE COURT: All right. Now, again, your sentence
3  will not be dictated by the guidelines. It's dictated only by
4  congressional authority. But I will consider those guidelines
5  in sentencing you; you understand that?

6       THE DEFENDANT: Yes.

7       THE COURT: A few other things I want to make sure
8  you understand. In federal court in the United States there
9  is no such thing as parole. So when you hear that you're
10 going to get a sentence, you should expect to serve that
11 sentence and not just a fraction of it like we hear sometimes
12 from state authorities; you understand that?

13      THE DEFENDANT: Yes.

14      THE COURT: Your sentence will include a period of
15 supervised release. That's a period of time after you're
16 released from prison in which you'll have to follow certain
17 rules that I will establish for you on the day of your
18 sentencing. What's important for you to know today is if you
19 don't follow those rules even after you're released from
20 prison, you can be sent back to prison. Do you understand
21 that?

22      THE DEFENDANT: Yes.

23      THE COURT: Today the issue that is before me is
24 whether or not to accept your plea agreement. Your sentencing
25 will be on a future date. That's procedurally just how we

1  have to do it.  In the future on the day of your sentencing if
2  I give you a sentence and you're disappointed, it's not what
3  you had hoped for, do you understand that that wouldn't
4  justify you trying to withdraw or I'm going to use the word
5  get out of the guilty plea that I would be approving today?
6            THE DEFENDANT:  Yes.
7            THE COURT:  They're separate issues; you understand
8  that?
9            THE DEFENDANT:  Yeah.
10           THE COURT:  Now, you do have a right to a jury
11 trial.  Has that been discussed with you?
12           THE DEFENDANT:  Yes.
13           THE COURT:  I want at least some of the specifics of
14 the jury trial to be on the record.
15           If you went to jury trial, there would be 12 jurors.
16 All of them would unanimously have to agree that you're guilty
17 or in the eyes of the law you wouldn't stand guilty.  The
18 burden to prove your guilt would be on the government.  They
19 would have to prove that beyond a reasonable doubt.  You would
20 have no burden to prove anything.  The government would have
21 the burden of proof.  You would have the opportunity to have a
22 lawyer appointed for you, of course, and your lawyer would get
23 to cross-examine, impeach and confront every item of evidence
24 and every witness that the government called against you.  Are
25 you aware of that?

1        THE DEFENDANT:  Yes.

2        THE COURT:  In addition, of course, your lawyer
3   could call witnesses on your own behalf and present evidence
4   on your own behalf.  If a witness didn't want to appear -- to
5   the extent I had the power within my jurisdiction -- I would
6   compel them to come to trial.  Do you understand that?

7        THE DEFENDANT:  Yes.

8        THE COURT:  At trial you would have a right to take
9   the stand and testify on your own behalf, but if you wanted to
10  remain silent, not testify, that would be your right.  I would
11  protect that right; no one would be allowed to force you to
12  testify.  And I would even instruct the jury, if requested,
13  that they shouldn't draw any inference from your decision to
14  take advantage of your right.  Are you aware of that?

15       THE DEFENDANT:  Yes.

16       THE COURT:  If at trial I made a mistake on a ruling
17  of law or evidence, you could appeal my rulings to a higher
18  court and if they agreed with you that I was wrong, they might
19  give you a new trial, even if you were found guilty.

20       If you accept -- if I accept these pleas of guilty,
21  you understand there would be no jury trial because there
22  would be no reason to have a jury trial; you would have
23  already admitted your guilt?  You're aware of that?

24       THE DEFENDANT:  Yes.

25       THE COURT:  So effectively you'll be waiving all

1  those rights associated with jury trial; you're aware of that?
2          THE DEFENDANT: Yes.
3          THE COURT: In addition, in Paragraph 15 of the
4  agreement you waive more than just the right to a jury trial;
5  you also waive the right to raise certain issues on appeal or
6  to file a post-conviction lawsuit; that is, a lawsuit
7  challenging things that happened during the process. Are you
8  aware that you are waiving these rights described in
9  Paragraph 15?
10         THE DEFENDANT: Yes.
11         THE COURT: I want you to look at Paragraph 3 of the
12 agreement. I know I'm intentionally doing this out of order
13 and I do it on purpose.
14         In order to accept a plea from you of guilty, I have
15 to believe that there are facts which if proven to a jury
16 persuasively would be enough to support a conviction. In this
17 agreement that is listed in Paragraph 3 called Factual Basis
18 for Guilty Plea, I know you've told me you've read it, you've
19 gone over it with your lawyer, but I emphasize this paragraph
20 because it's important in a couple ways. One, it might affect
21 the sentencing guidelines -- don't know that it will in your
22 case given the stipulations but it might -- but it also
23 provides the basis of a finding of guilt, that I have to
24 believe there's enough evidence before I can accept a guilty
25 plea.

1     So have you read Paragraph 3, the single-spaced
2  paragraphs, starts on page 2 and goes over to page 3?  You
3  read that very carefully?
4          THE DEFENDANT:  Yes.
5          THE COURT:  You've gone over it with your lawyer?
6          THE DEFENDANT:  Yes.
7          THE COURT:  And is there anything in that
8  Paragraph 3 that you believe is inaccurate in any way or is
9  everything in there correct?
10         THE DEFENDANT:  Yes.
11         THE COURT:  You hesitated.  If there's something you
12 think that's wrong, you need to tell me.  You believe it's
13 correct?
14         THE DEFENDANT:  Yes.
15         THE COURT:  Any further record under Rule 11 the
16 government wants me to make?
17         MR. MCGULL:  No, Your Honor.
18         THE COURT:  Mr. Lewis, any further record you want
19 me to make?
20         MR. LEWIS:  No, Your Honor.  Thank you.
21         THE COURT:  Now, ma'am, I've asked you all the
22 questions I feel I need to ask you in order to accept a plea
23 agreement, but before I make any final ruling I want to ask
24 you one more time:  Do you believe that this plea agreement is
25 what's in your best legal interest?

1          THE DEFENDANT:  Yes.

2          THE COURT:  Are you aware that under the plea
3   agreement you're pleading guilty to Counts 2 and 3 of the
4   superseding indictment?

5          THE DEFENDANT:  Yes.

6          THE COURT:  How do you want to plead to those two?
7   Do you want to plead guilty to them?

8          THE DEFENDANT:  Yes.

9          THE COURT:  Is that because you are guilty of the
10  crimes described in Count 2 and 3 of the superseding
11  indictment?

12         THE DEFENDANT:  Yes.

13         THE COURT:  The Court finds that the defendant is
14  capable of -- competent to have entered into the plea
15  agreement and to have entered into the guilty pleas contained
16  in the plea agreement.  The Court finds that the plea
17  agreement has been entered into by this defendant
18  understandingly, knowingly and voluntarily and that the pleas
19  of guilty contained in the agreement also have been entered
20  understandingly, knowingly and voluntarily.  The Court finds
21  that the plea agreement and the guilty pleas contained in the
22  plea agreement have been entered by this defendant after she
23  received full, competent and capable services and advice of
24  legal counsel and after she has been fully advised of the
25  consequences of entering into the guilty pleas and the plea

14

agreement. The Court finds there is a factual basis for the guilty pleas described in the plea agreement. The Court therefore accepts the plea agreement, approves the plea agreement and accepts the guilty plea of the defendant to Counts 2 and 3 of the superseding indictment.

The Court will order a presentence investigation report to be prepared. I believe a preliminary one may have already been prepared.

What's going to happen now real quickly is the presentence investigation report will be finalized. I don't know exactly the status but it will be finalized. You'll have a right to have input into it if you want to. You'll get a copy of it. If you think they are errors in it -- as will the government -- then objections can be filed. If they can't be worked out with the probation office, then on the day of your sentencing I'll take up those. As soon as we can get that done, we'll schedule you for sentencing.

At sentencing we will remind you of what the authorized punishment is that the Congress enacted that we talked about a minute ago. I will formally adopt what the sentencing guidelines say for your sentence. We'll have argument from counsel about what your sentence could be. Sometimes people submit letters, sometimes people present testimony; we'll give everybody an opportunity to to do all these kind of things.

15

1          Before I make a final decision if you want to say
2 something to me, I'll give you that chance.  Understand,
3 you're not required to say anything.  If you want to remain
4 silent, that's fine.  I won't hold it against you.  But if you
5 do want to say something, I'll give you that chance at your
6 sentencing hearing.
7          When you're finished and the evidence is in at the
8 hearing or whatever arguments are going to be made, then I'll
9 make a final decision on what your sentence should be at your
10 sentencing hearing.  I'll explain the basis of my decision.
11          Between now and then you'll stay in whatever local
12 facility that you've been in.  Ultimately, once you receive a
13 sentence you'll be transferred to an institution run by the
14 Bureau of Prisons.  We'll try to get this scheduled as soon as
15 we can for you.
16          All right.  Do you understand what's going to
17 happen?
18          THE DEFENDANT:  Yes.
19          THE COURT:  Anything further from the government?
20          MR. MCGULL:  No, Your Honor.
21          THE COURT:  Anything further on behalf the
22 defendant?
23          MR. LEWIS:  No, Your Honor.
24          THE COURT:  We'll be in recess.
25          (Court stands in recess at 1:54 p.m.)

16

```
 1                    CERTIFICATE OF OFFICIAL REPORTER
 2         I, Jeannine M. Rankin, Federal Official Court Reporter,
 3   in and for the United States District Court for the Western
 4   District of Missouri, Southern Division, do hereby certify
 5   that the foregoing is a true and correct transcript of the
 6   stenographically reported proceedings.
 7
 8
 9
10
11                              /s/ Jeannine M. Rankin
12   Date:     06/27/19      Jeannine M. Rankin, CCR, CSR, RPR
```